**AKRON CENTER FOR REPRODUCTIVE HEALTH, et al., Plaintiffs,**

**v.**

**CITY OF AKRON, et al., Defendants,**

**Francois Seguin, M.D. et al., Intervening Party Defendants.**

**No. C78–155.**

United States District Court, N.D. Ohio, E.D.

Feb. 8, 1985.

---

## MEMORANDUM OPINION

DOWD, District Judge.

The Court has before it the motion of plaintiffs' counsel for an award of attorney fees following plaintiffs' prosecution of an action brought pursuant to 42 U.S.C. § 1983 attacking the constitutionality of an ordinance adopted by the City of Akron in 1978 regulating abortions within Akron.

The plaintiffs are three Ohio corporations that operate out-patient abortion clinics in Akron and a physician who has performed abortions at one of the clinics. The defendants are the City of Akron, its mayor and director of public health and the police prosecutor of Akron (hereinafter referred to as Akron). Upon motion, the District Court permitted participation by a group of intervenors "solely in their independent capacity as parents of unmarried minor daughters of child-bearing age," (hereinafter referred to as intervenors).

The case was tried before the Hon. Leroy J. Contie, Jr., in District Court during the period of twelve trial days in September of 1978. On August 22, 1979, Judge Contie declared several sections of the ordinance unconstitutional and several sections constitutional and found that the plaintiffs had no standing as to the remaining sections.

*Akron Center for Reproductive Health v. City of Akron*, 479 F.Supp. 1172 (1979). Following Judge Contie's ruling, notices of appeal were filed by Akron, the intervenors and the plaintiffs.

On June 12, 1981, the Court of Appeals for the Sixth Circuit affirmed in part and reversed in part Judge Contie's decision. *Akron Center for Reproductive Health v. City of Akron*, 651 F.2d 1198 (6th Cir. 1981). Thereafter, the United States Supreme Court granted *certiorari* to Akron and plaintiffs and denied intervenors' petition for *certiorari*. Subsequently, the Supreme Court affirmed in part and reversed in part the holdings of the Sixth Circuit Court of Appeals. *See City of Akron v. Akron Center for Reproductive Health, Inc.*, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983).

Following the conclusion of the proceedings before the United States Supreme Court, the plaintiffs renewed their motion for attorney fees. They first sought an award of attorney fees in October, 1979. By order dated February 22, 1980, Judge Contie deferred decision on the fee application pending the resolution of the appeal of the case on the merits.

By the time this case was returned to the District Court, Judge Leroy Contie had been elevated to the Sixth Circuit Court of Appeals. Hence the case was submitted to the draw and assigned to this Court. This Court is placed in the position of determining the application for the fees without the benefit of having presided over the trial in District Court.

## I. APPLICABLE LAW

■ In order to encourage lawyers to represent litigants in civil rights litigation, Congress adopted the Civil Rights Attorney's Fees Awards Act of 1976. 42 U.S.C. § 1988 authorizes district courts to award a reasonable attorney's fee to prevailing civil rights litigants.[1] In *Hensley v. Eckerhart*,

---

1. 42 U.S.C. § 1988 provides in pertinent part: ... In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United

461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the United States Supreme Court ruled that a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended times a reasonable hourly rate. In *Blum v. Stenson,* —— U.S. ——, 104 S.Ct. 1541, 79 S.Ct. 891 (1984), the United States Supreme Court ruled that "reasonable fees" in federal civil rights action are to be calculated according to prevailing market rates in the relevant community (Akron) regardless of whether plaintiff is represented by private or nonprofit counsel.[2] Additionally, *Blum v. Stenson* holds that the district court, in the exercise of its discretion, is authorized to allow the prevailing party an upward adjustment in attorney fees in cases of exceptional success. The upward adjustment is frequently referred to as an enhancement of the award and the upward movement or enhancement is accomplished by applying a multiplier to the authorized fee determined by multiplying the number of hours as fixed by the Court by the hourly rate as fixed by the Court.

The Supreme Court decisions in *Hensley, supra* and *Blum, supra,* followed a major decision on the issue of attorney fees by the Sixth Circuit in *Northcross v. Board of Education of Memphis City Schools,* 611 F.2d 624 (6th Cir.1979) where guidelines for district courts were published with respect to the task of fixing attorney fees. The Court directed the district courts with the following language:

> The district court should indicate on the record the number of hours it finds the plaintiff's attorneys to have expended on the case. This finding must first take into account the affidavits of counsel. The hours claimed may not be automatically accepted by the district court, but

to the extent that hours are rejected, the Court must indicate some reason for its action so that we may determine whether the court properly exercised its discretion or made an error of law in its conclusion. Hours may be cut for duplication, padding or frivolous claims. In complicated cases, involving many lawyers, we have approved the arbitrary but essentially fair approach of simply deducting a small percentage of the total hours to eliminate duplication of services.... Such an approach seems preferable to an attempt to pick out, here and there, the hours which were duplicative (citation omitted).

> Beyond this allowance for duplicative services, however, we hold that if a district court decides to eliminate hours of service adequately documented by the attorneys, it must identify those hours and articulate its reasons for their elimination.

Mindful of the admonitions and directions of *Hensley, Blum* and *Northcross, supra,* the Court turns now to the controversy at hand.

## II. SCOPE OF THE FEE APPLICATION

Plaintiffs' counsel seek a lodestar figure for the attorney fees of $469,396.45 representing 4,391.4 hours of services rendered. Additionally, plaintiffs seek their cost and expenses in the sum of $21,230.76. Plaintiffs' counsel also petitioned the Court for an enhancement of the lodestar figure so that the total request is for $701,936.36 for fees and an additional sum of $21,230.76 for a total application of $723,194.12.

At the outset, plaintiffs' cause was handled at the District Court by four lawyers. At the Circuit Court, two lawyers were

---

States, a reasonable attorney's fee as part of the costs.

2. In *Blum v. Stenson,* the Solicitor General, as *amicus curiae,* urged the Supreme Court to adopt a cost-related standard only for fee awards made to nonprofit legal aid organizations, contending that market rates reflect the level of compensation necessary to make profit making attorneys, but that such rates provide excessive fees to nonprofit counsel. The United

States Supreme Court rejected the Solicitor General's position and ruled that fee awards under the provisions of 42 U.S.C. § 1988 should be calculated according to prevailing market rates in the relevant community. Thus, the fact that plaintiffs' counsel worked for on behalf of nonprofit organizations is not a relevant consideration in the computation of the attorney fees to be awarded in this matter.

involved. When the case reached the United States Supreme Court, a task force of new lawyers became involved on behalf of the plaintiffs. The prosecution of the fee application has included the services of an additional lawyer so that the petitions for attorneys' fees on behalf of the plaintiffs have been filed by the following lawyers:

| | NAME | WORK SCOPE [3] | HOURS | | RATE | TOTAL REQUEST |
|---|---|---|---|---|---|---|
| 1. | Landsman, Stephan | All courts | DC | 815 | 75 | $ 61,125.00 |
| | | | CA/SC | 1515 | 125 | 188,375.00 |
| 2. | Hawley, Wayne | DC | | 508.4 | 60 | 30,504.00 |
| 3. | Roberts, Patricia | DC | | 175 | 50 | 8,750.00 |
| 4. | Leitzer, Ellen | DC | | 236 | 50 | 11,800.00 |
| 5. | Benshoof, Janet | SC | | 527.05 | 175 | 92,233.70 |
| 6. | Stavile, Deborah | SC | | 83.25 | 100 | 8,325.00 |
| 7. | Law, Sylvia | SC | | 27.7 | 175 | 4,847.50 |
| 8. | Hunter, Nan D. | SC | | 101.75 | 150 | 15,262.50 |
| 9. | Lipton, Lois | SC | | 100 | 100 | 10,000.00 |
| 10. | Lynn, Suzanne | SC | | 149.80 | 150 | 22,470.00 |
| 11. | Beggs, Gordon | CA | | 14.5 | 75 | 1,087.50 |
| | | Fee App. | | 20.75 | 75 | 1,556.25 |
| | | | | 72.75 | 100 | 7,275.00 |
| 12 | Jacobs, Louis | Fee App. | | 43.5 | 110 | 4,785.00 |
| | | TOTAL | | 4,391.4 | | $469,396.45 |

RECAPITULATION OF FEE REQUEST

DISTRICT COURT WORK

| | | |
|---|---|---|
| 1. | Landsman | $ 61,125.00 |
| 2. | Hawley | 30,504.00 |
| 3. | Roberts | 8,750.00 |
| 4. | Leitzer | 11,800.00 |
| | Total | $112,179.00 |
| Request for 32% increase for delay in receipt | | 35,897.00 |
| | Total Request | $148,076.00 |

APPELLATE COURT WORK

| | | |
|---|---|---|
| 1. | Landsman | $189,375.00 |
| 2. | Beggs | 1,087.50 |
| 3. | Benshoof | 92,233.70 |
| 4. | Stavile | 8,325.00 |

3. The initials DC represent District Court, CA represent Court of Appeals for the Sixth Circuit, and SC represent Supreme Court of the United States.

APPELLATE COURT WORK

| | | |
|---|---|---:|
| 5. | Law | 4,847.50 |
| 6. | Hunter | 15,262.50 |
| 7. | Lipton | 10,000.00 |
| 8. | Lynn | 22,470.00 |
| | Total | $343,601.20 |

FEE APPLICATION

| | | |
|---|---|---:|
| 1. | Beggs | $ 8,831.00 |
| 2. | Jacobs | 4,785.00 |
| | Total | $ 13,616.00 |

MULTIPLIER APPLICATION

| | |
|---|---:|
| District Court Work | $148,076.20 |
| Appellate Court Work | 343,601.20 |
| Total | $491,677.40 |
| Add on for multiplier | 196,670.96 |
| Total Request less fee app. | $688,347.36 |
| Fee application | 13,616.00 |
| Total Request for fees | $701,963.36 |

## III. CASE HISTORY

This case began on April 19, 1978, when the plaintiffs brought an action seeking relief from the enforcement of Akron City Ordinance 160–1978, and a declaration that the ordinance was unconstitutional in light of the opinions of the Supreme Court of the United States in *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) and *Doe v. Bolton*, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973). The case went to trial upon plaintiffs' fourth amended complaint for declaratory, injunctive and other relief in which plaintiffs alleged a due process of law violation under the first, fourth, fifth, ninth, and fourteenth amendments to the United States Constitution; an Equal Protection violation under the fourteenth amendment; an establishment of religion violation under the first amendment; and a free exercise of religion violation under the first amendment. The ordinance contained nineteen sections all of which were brought under attack by plaintiffs' action for relief.

The District Court found unconstitutional Sections 1870.05 (requiring 24 hours notice to the parents or guardian of an unmarried woman under age eighteen of the request for abortion services and requiring parental consent for abortions performed on women under the age of fifteen); 1870.-06(B) (requiring the attending physician to inform the patient of the existence of her pregnancy and of the alternatives to abortion as well as the nature of the procedure); 1870.09 (requiring that abortion facilities preserve certain medical records); and 1870.16 (requiring the remains of the fetus to be disposed of in a "humane and sanitary manner").

The District Court found constitutional Sections 1870.06(A); 1870.06(C); 1870.-06(D); 1870.07; 1870.08; 1870.10; and 1870.17.

The District Court found that plaintiffs lacked standing to challenge Sections 1870.-02; 1870.03; 1870.04; 1870.11; 1870.12; 1870.13; 1870.14 and 1870.15.

On appeal to the Sixth Circuit, the District Court's determinations were affirmed as to Sections 1870.03 (finding constitutional the requirement that all abortions after the first trimester be performed in hospitals); Section 1870.05; Section 1870.06(B); and Section 1870.16. However, the Sixth Circuit reversed the District Court's findings that Sections 1870.06(C) (physician's duty to orally inform the patient with respect to the particular risks associated with her pregnancy and the abortion technique

to be employed) and 1870.07 (24 hour waiting period between signing of consent and performance of abortion) were constitutional.

The Supreme Court of the United States granted *certiorari* and held Sections 1870.-03, 1870.05(B), 1870.06(B), 1870.06(C), 1870.07, and 1870.16, to be held unconstitutional. Thus the decision of the Court of Appeals for the Sixth Circuit finding § 1870.03 to be constitutional was reversed, clearing the way for the performance of abortions after the first trimester in the out-patient abortion clinics in Akron.[4]

Hence, the substantive sections of Akron ordinance 160–178 which remained effective are:

§§ 1870.02 (requiring abortions to be performed by licensed physicians);

1870.04 (regulating abortions after viability);

1870.06(A) and (D) (voluntary consent memorialized on a form);

1870.08–1870.11 (providing for record keeping, inspections, and statistical reporting);

1870.12 (waiving the application of certain sections in an emergency);

1870.13 (insofar as it provides that the City's clinic will not do abortions);

1870.14 (on freedom of conscience);

1870.15 (regulating experimentation); and

1870.17 (relating to aftercare instructions).

The substantive portions of the ordinance which have been invalidated follow:

§§ 1870.03 (second trimester hospital requirement);

1870.05 (minor notice and consent);

1870.06(B) and (C) (physician's script and risk notification);

1870.07 (24 hour waiting period); and

1870.16 ("humane" disposal of remains).

## IV. ISSUES BEFORE THE COURT
## INTRODUCTION

The parties have been unable to resolve, without the intervention of the Court, the plaintiffs' application for fees. The Court understands the defendants and the intervenors to concede that the plaintiffs are the prevailing party and thus entitled to an award of fees pursuant to the command of 42 U.S.C. § 1988. However, serious disputes remain with respect to the extent of plaintiffs' success, the right of plaintiffs' counsel for fees for work before the Court of Appeals and the United States Supreme Court, the reasonableness of the hours claimed by plaintiffs' counsel, the reasonableness of the hourly rates claimed by counsel, and whether counsel is entitled to an enhancement of the fees.

### A. *The Extent of Plaintiffs' Success.*

Under 42 U.S.C. § 1988, a court is directed, in exercise of its discretion, to award fees to the prevailing party. In this case, the failure of the District Court to award fees to the prevailing party would constitute an abuse of that discretion. However, even in those cases where the identity of the prevailing party is obvious, as in this case, a dispute frequently arises as to the nature and extent of the prevailing party's success.

Akron and the intervenors argue that plaintiffs did not enjoy total success in their attack upon the constitutionality of the ordinance and thus, the application for fees must, of necessity, be discounted on the ground of only partial success. The plaintiffs disagree, arguing that they suc-

---

**4.** Plaintiffs argue that even though the Sixth Circuit held that no plaintiff had standing to challenge the parental notice procedure of Section 1870.05(A) (*see* 651 F.2d 1205–1206) and no appeal was taken to the Supreme Court as to this Section, the Supreme Court decision holding Section 1870.05(B) unconstitutional for minors under fifteen nevertheless forecloses the City of Akron from enforcing the notice provision of Section 1870.05(A). That provision serves to trigger parental vetoes of abortion decisions by older minors because Section 1870.05(A) contains the same judicial consent provision the Supreme Court held ineffective to comply with the Constitutional requirement of a judicial alternative.

ceeded in striking the substantively burdensome provisions of the Akron ordinance that imposed an improper burden on the right of women to choose an abortion. The plaintiffs cite *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983), where the Court held:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.

and argue that the basic success of their effort serves to negate the application of a discount of the hours claimed. The defendants respond by pointing out that the plaintiffs spent a great amount of time in challenging all of the sections of the ordinance with particular emphasis on the claim that § 1870.04, abortion after viability, was unconstitutional, even though no plaintiffs had expressed a desire to perform post-viability abortions.

 *Hensley v. Eckerhart, supra,* teaches that even where the District Court finds the plaintiff to be "a prevailing party" and thus entitled to recover an attorney's fee under 42 U.S.C. § 1988, the District Court is required to determine the extent of plaintiff's success and articulate an explanation for the attorney fee award where a finding is made that plaintiff's success was less than complete. In the case *sub judice*, it is beyond dispute that the plaintiffs achieved substantial success in their undertaking as a result of the Supreme Court declaration that critical sections of the ordinance were unconstitutional. Nonetheless, the success was not complete with respect to the challenges raised at the District Court level given the fact that a number of provisions in the ordi-

nance remain enforceable, including the provisions respecting abortion in the viability stage. In the Court's view, the substantial but not complete success of plaintiffs' counsel requires a reduction in the hours claimed for the work accomplished at the District Court level. Following a review of the record, the Court concludes that the reduction on the basis of partial success should be twenty percent.

B. *Are plaintiffs' counsel entitled to an award of attorney fees for services rendered in the Sixth Circuit and in the Supreme Court of the United States?*

 *O'Bryan v. County of Saginaw, Michigan,* 722 F.2d 313 (6th Cir.1983), and *Smith v. Detroit Board of Education,* 728 F.2d 359 (6th Cir.1984), instruct that it is the duty of the District Court, not the Circuit Court, to determine the appropriate attorney's fee for the prevailing party for work done at the Circuit Court level. Consequently, this Court accepts that duty with respect to the services rendered by plaintiffs' counsel before the Sixth Circuit. No suggestion has been made by any of the parties to this controversy that a different duty applies with respect to plaintiffs' application for services rendered before the Supreme Court of the United States. Consequently, this Court will consider and determine the applications. However, before the Court addresses the several challenges raised to the lodestar [5] figures advanced by plaintiffs' counsel, the threshold challenges to plaintiffs' counsel's right to fees for the appellate work must first be considered.

Defendant Akron and intervenors argue that no fees should be allowed for plaintiffs' counsel's work before the Sixth Circuit because of the application of *Buian v. Baughard,* 687 F.2d 859 (6th Cir.1982) combined with the fact that the Sixth Circuit in affirming in part and reversing in part the District Court stated in conclusion "No costs allowed." In *Buian, supra,* the

---

**5.** In attorney's fees parlance, the lodestar is the total obtained when each attorney's numbers of hours of services is multiplied by the attorney's

hourly rate. Algebraically, the lodestar is expressed as follows:

$$\text{lodestar} = \text{hours} \times \text{hourly rate}$$

plaintiff was the prevailing party in District Court in an action brought pursuant to 42 U.S.C. § 1983. However, the plaintiff appealed the amount of the jury award and the dismissal of certain of his claims. The judgment of the District Court was affirmed in all respects and no costs were taxed to either party. Subsequently, counsel for plaintiff was granted attorney fees by the District Court for prosecuting the unsuccessful appeal. In a second appeal, the Court of Appeals for the Sixth Circuit meticulously traced the enactment of 42 U.S.C. § 1988 giving federal courts discretion to award attorney fees in civil rights cases and concluded that attorney fees follow cost determinations to be made at three levels: the District Court, the Court of Appeals, and the Supreme Court. Specifically, *Buian* states:

> Each court has jurisdiction to make *de novo* awards of costs only for proceedings within its jurisdiction. The statutory directive that attorney's fees may be awarded as "part of the costs" must, therefore, be read with reference to Fed. R.Civ.P. 54(d), Fed.R.App.P. 39(a), and Sup.Ct.R. 50. In the absence of an express statutory mandate, respect for the three levels at which costs have traditionally been awarded pursuant to court rule directs the conclusion that a prevailing party is not entitled to attorney's fees for appeals as part of district court costs. Instead, a party must be entitled to receive costs on appeal as a result of the appellate court's award of costs before it is eligible to receive attorney's fees as a part of those costs under section 1988.

> . . . . .

> In summary, we read section 1988 as requiring that attorney's fees be awarded to the party who has prevailed on the case as a whole only if costs are awarded to that party at the level for which fees for services are sought: the district court, the court of appeals, and the Supreme Court.

The plaintiffs argue that the Sixth Circuit decision in this case predates *Buian* and is, therefore, inapplicable. Additionally, plaintiffs characterize the precise instructions set forth in *Buian* as *obiter dictum* because the plaintiff-appellant, although the prevailing party in District Court, was not the prevailing party on appeal given the affirmance of the District Court's decision. In this Court's view, the precise pronouncements in *Buian* cannot be so easily discarded or ignored. In *Kelley v. Metropolitan County Board of Education of Nashville*, 558 F.Supp. 468 (D.C.M.D.Tenn.1983), Judge Wiseman cited and relied upon *Buian* in denying the prevailing party attorney fees for the appellate work because of the Sixth Circuit's ruling that each party was to bear its own costs.

■ In this case, the successful prosecution of the appeal to the United States Supreme Court with a reversal of the Court of Appeals' ruling as to the constitutionality of the requirement that abortions be performed in an accredited hospital after the first trimester adds a factor not considered or discussed in *Buian*. Accordingly, this Court will not follow *Buian*, but rather will award attorney fees for the work of plaintiffs' counsel before the Sixth Circuit and, in the interest of judicial economy, separately identify the award of fees for that component of plaintiffs' application so that a reviewing court will be equipped to enter final judgment in the event the allocation of fees for the work performed at the Sixth Circuit is deemed contrary to law.

■ Additionally, Akron contends that the explicit and limiting nature of the award of costs by the United States Supreme Court negates plaintiffs' application for fees for services rendered before the United States Supreme Court. *Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), instructs that 42 U.S.C. § 1988 permits an award of attorney fees "as a part of the costs." However, this Court is unable to find any citation by the United States Supreme Court as specific as the Sixth Circuit's instructions in *Buian* respecting the issue of whether the prevailing party will be entitled to attorney fees.

In this case, the Supreme Court's order respecting costs states as follows:

IT IS FURTHER ORDERED that the petitioners, Akron Center for Reproductive Health, Inc., et al., recover from the City of Akron, et al. Three Hundred Dollars ($300.00) for their costs herein expended.

It is the contention of the defendants that the wording of the order in explicitly ordering the payment of the recovery of only $300.00 for the plaintiffs' costs limits plaintiffs' recovery to that amount, thereby requiring the District Court to deny plaintiffs' request for attorney fees, even though plaintiffs are admittedly the prevailing party in the context of 42 U.S.C. § 1988. In the Court's view, such a ruling would shatter completely the intent of Congress in providing for a specific allowance of attorney fees as part of the costs in a civil rights action such as this case. Consequently, this Court will consider, award, and separately identify attorney fees for plaintiffs' counsel's services before the Supreme Court of the United States.

C. *The computation of the lodestar figures for work performed before the District Court, Court of Appeals, and Supreme Court.*

INTRODUCTION

As previously indicated, the Court, in awarding attorney fees, will separately identify the award with respect to services rendered at District Court, Circuit Court, and the United States Supreme Court. *Northcross v. Board of Education of Memphis City Schools*, 611 F.2d 624 (6th Cir.1979), and more recently *Hensley v. Eckerhart, supra*, and *Blum v. Stenson, supra*, instruct the District Court to develop a lodestar figure for the services rendered by determining the number of hours that will be compensated and then multiplying the number of hours by the hourly rate allowed for the attorney in question. After the lodestar figure has been computed, then the issue of enhancement, frequently referred to as the application of a multiplier to the lodestar figure, becomes the next consideration. *See Hensley v. Eckerhart, supra*, 103 S.Ct. at page 1940 and *Blum v. Stenson, supra*, 104 S.Ct. at page 1548.

A. HOURS AWARDED

I. *District Court.*

■ The applications of Landsman, Hawley, Leitzer, and Roberts for services rendered before the District Court request compensation for a total of 1734.4 hours. A review of the docket entries and the transcript of proceedings indicates a lengthy, time consuming proceeding. The complaint was filed on April 19, 1978, eleven days before the challenged ordinance was to become effective on May 1, 1978. By the time Judge Leroy J. Contie, Jr., of the District Court filed his lengthy opinion (*see* 479 F.Supp. 1172), 249 separate documents had been entered on the docket demonstrating a document intensive litigation effort. The transcript is over 1900 pages in length. The trial was conducted on twelve separate trial days. The challenge to the fee application for the work at District Court has focused upon the limited success issue. (*see* pages 1283–1284.) However, no claim has been raised before this Court that the hours claimed in the prosecution of this matter at District Court were either excessive or represented duplication. Nonetheless, *Northcross, supra*, at page 636, instructs the Court, even where there is no objection raised to the fee application, to independently examine the application. This Court has conducted such an examination even though admittedly handicapped by the fact that this Court did not preside over the proceedings at the District Court level. In this Court's view, the use of four lawyers at the trial level inevitably results in some duplication.[6] Ac-

---

**6.** The Court has scanned the lengthy transcript of over 1900 pages. The plaintiffs presented 28 witnesses. Many of the plaintiffs' witnesses were physicians. The presentation of the witnesses was shared by the four lawyers representing the plaintiffs. Landsman presented seven witnesses, Hawley nine witnesses, Roberts seven witnesses and Leitzer five witnesses. Ak-

cordingly, the Court will apply a five percent reduction to the fee applications of Landsman, Hawley, Leitzer and Roberts, for duplication of services.

## 2. *The Court of Appeals.*

The Court's review of the applications indicates that only Landsman and Gordon Beggs filed applications for services performed before the Court of Appeals for the Sixth Circuit. Mr. Landsman's application for fees filed August 4, 1983 claims 1515 hours of combined service before the Sixth Circuit and the United States Supreme Court. The Court has examined the application and calculated that 556.25 hours are claimed for work before the Court of Appeals and that the remaining hours 960.3 are in connection with Landsman's work before the United States Supreme Court. Beggs' application lists a total of 40.5 hours which is divided between 14.5 hours for appellate services and 26.0 hours for fee application services. No claim has been raised by the defendants that the hours claimed by Landsman and Beggs for services before the Court of Appeals are excessive. As Landsman claims nearly 98% of the hours expended before the Court of Appeals, the issue of duplication is not present. Upon review, the Court finds Landsman's claim for 556.25 hours and Beggs' claim for 14.5 hours to be reasonable.

## 3. *The Supreme Court.*

The plaintiffs assembled a task force of attorneys, experienced in litigation involving abortion issues, once Akron and the intervenors sought *certiorari* in the United States Supreme Court. The defendants are highly critical of the application for services rendered in the United States Supreme Court because of the involvement of seven lawyers resulting in a total claim of 1949.85 hours for the work of the seven lawyers, Landsman, Benshoof, Stavile, Law, Hunter, Lipton, and Lynn.

The decision of the United States Supreme Court to grant *certiorari* in this case against the backdrop of the national controversy respecting abortion and the many issues that have arisen since the 1973 decisions in *Doe v. Bolton,* 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 and *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147, justified a major effort on behalf of the plaintiffs in the presentation of this case before the United States Supreme Court.

██ The Court perceives his task in determining an award of attorney fees for services performed before the Supreme Court to include an evaluation of the reasonableness of the total hours claimed for services performed before the Supreme Court. In order to evaluate the issue of reasonableness as to the hours claimed, the Court has requested and received copies of the various documents filed on behalf of the plaintiffs with the Supreme Court.

Both Akron and the intervenors filed petitions for *certiorari.* Thus, the first effort of plaintiffs' counsel was to file a brief in opposition to the petitions for *certiorari* designed to reverse the gains achieved by plaintiffs at the District Court and before the Court of Appeals for the Sixth Circuit. Secondly, in an attempt to reverse the ruling of the Sixth Circuit that the hospital requirement for abortions to be performed after the first trimester was constitutional, the plaintiffs filed a cross-petition for *certiorari* as to that issue. Additionally, plaintiffs filed a supplement to their cross petition for *certiorari.* After *certiorari* was granted both Akron and the plaintiffs, a joint appendix of 339 pages was assembled and filed. Plaintiffs then filed their brief on the merits, using all pages alloted, and coupled the brief with an extensive array of lodged materials in an attempt to update the medical and statistical information that had been developed since last the United States Supreme Court addressed the controversial issues surrounding the subject of abortion.[7] Finally, a reply brief was filed by counsel for plaintiffs. Thus,

ron and intervenors presented eighteen witnesses in defense of the challenged ordinance.

7. See appendix 1 for the three page Table of Contents for the Lodged Materials.

seven separate documents were filed counting the joint appendix.

The task force assembled included lawyers who have made significant career commitments in support of "women's reproductive rights" and one can readily understand the intensity with which they devoted their time and efforts to the end that the contentions of the plaintiffs would be recognized and supported by the United States Supreme Court. The Court does not question that the hours as claimed were spent. Moreover, After reviewing the briefs and lodged materials filed by plaintiffs' counsel, this Court, without reservation, declares that the briefs and materials filed were uniformly excellent and ably articulated the plaintiffs' position. However, the standard by which challenges to the number of hours expended is to be judged, remains one of "reasonableness."

 It is this Court's finding, based in part upon his years of experience as an advocate and an appellate judge that the number of hours expended were significantly beyond the number necessary to properly brief and argue plaintiffs' position before the Supreme Court. The hours claimed represent approximately 1.2 years for a single practitioner if one concludes that 1600 hours of chargeable time is the median for lawyers engaged in the private practice of law. The Court notes that the task force engaged in a series of moot court arguments as a part of the preparation for the oral argument before the Supreme Court. The moot court arguments resulted in significant travel, and the time for that travel is represented in the billings submitted.

Many hundreds of hours are claimed for drafting the briefs filed with the Supreme Court. Additionally, over 100 hours are claimed for editing the briefs. Attorney Lipton served as second chair to Attorney Landsman before the Supreme Court for the oral arguments. However, Attorneys Hunter and Lynn also attended the oral arguments in Washington, D.C., and billed their time and travel for that event. Attorney Landsman logged over 80 hours in travel time during the Supreme Court phase of the proceedings as he traveled to Washington, D.C., New York, and Chicago from his home base of Cleveland.

Stated simply, it is the Court's conclusion that the hours claimed are in excess of what is reasonable under all the circumstances. Given that finding, and mindful of the obligation to reduce hours claimed because of duplication of services, the Court reduces the hours claimed by each member of the task force by 30%.

## B. HOURLY RATES

Each of the twelve attorneys for plaintiffs has filed an affidavit setting forth the attorney's experience, an itemization of the hours claimed, and a requested hourly rate. The only evidence introduced at the evidentiary hearing conducted by this Court on the subject of hourly rates, aside from the affidavits of plaintiffs' counsel, are three affidavits of lawyers practising in the city of Akron who cited their individual rates for practice in federal court of $50.00, $75.00 and $95.00 an hour respectively. Mr. Jacobs, who prosecuted the application for fees on behalf of plaintiffs' counsel, requested leave to file affidavits of Akron counsel to counteract the affidavits filed by Akron. Subsequently, the Court was notified by Mr. Jacobs that the publicity attendant to this case had negated his efforts to obtain affidavits from counsel in Akron on the subject of prevailing market rates. This Court, until being appointed to the Court, practised law in the Canton-Akron area and is generally familiar with rates being charged by counsel based upon his personal experience and the examination of numerous fee applications in other matters before the Court. Consequently, mindful of the directions of *Blum v. Stenson, supra*, the Court will summarize the affidavit-applications for fees and set a reasonable hourly rate.

### I. *Stephan Landsman.*

 Landsman served as lead counsel for the plaintiffs throughout the prosecution of this case. Landsman is a 1972

graduate of Harvard Law School, licensed to practice law in the states of New York and Ohio. In the first four years following graduation from law school, Landsman participated in the providing of legal services to indigent individuals through various legal services work. From May of 1976 until September of 1979, Landsman served as an assistant professor of law at the Cleveland-Marshall College of Law. Since September of 1979, Landsman has served as an associate professor of law at Cleveland-Marshall College. The Court finds Landsman's request for a rate of $75.00 an hour for work done at the District Court level and $125.00 an hour for work in connection with the United States Supreme Court proceedings to be reasonable. The Court reduces the request for the hourly rate of $125.00 to $100.00 an hour for Landsman's services before the Sixth Circuit, finding the latter amount to be reasonable for the period of time in question, 1979 to 1981, and in view of the fact that the number of hours claimed, although considerable in number, have not been reduced.

2. *Wayne Hawley.*

■ Hawley served as second chair counsel for the plaintiffs at the District Court. Hawley received his law degree from Yale University in 1974 and engaged in the private practice of law in the state of California until 1976. In 1977 and 1978 Hawley was employed by the American Civil Liberties Union in Cleveland and worked on a broad range of civil liberties issues. Hawley's request for compensation at the rate of $60.00 an hour for the District Court work is found to be reasonable.

3. *Patricia Roberts.*

■ Patricia Roberts·served as co-counsel for the plaintiffs during the District Court proceedings. Roberts graduated from Case Western Reserve University School of Law in 1976. Since November of 1976, she engaged in the private practice of law in Youngstown, Ohio, as an associate with the law firm of Green, Schiavoni, Murphy, Haynes, and Sgambati. Roberts re-

quests a rate of $50.00 an hour for her work in 1978. The Court finds that in 1978 a reasonable hourly rate for a law school graduate of two years was the sum of $40.00 an hour.

4. *Ellen Leitzer.*

■ Leitzer served as co-counsel for the plaintiffs for the District Court proceedings. Leitzer is a 1974 graduate from Emory University School of Law and was a member of the Georgia and District of Columbia bars. Leitzer had worked for the American Civil Liberties Union since graduating from law school. Leitzer requests compensation at the rate of $50.00 per hour for her services performed in 1978. The Court finds a reasonable hourly rate for a person of Leitzer's background and experience as of 1978 was $40.00 an hour.

5. *Janet Benshoof.*

■ In an affirmation filed August 4, 1983, Benshoof states that she engaged in the practice of law for eleven years. No indication is set forth with respect to the institution from which Benshoof received her law degree. She states she is admitted to the practice of law in New York and the United States District Court for the Southern Districts and Eastern Districts of New York, and also before numerous circuit courts and the Supreme Court of the United States. Benshoof has engaged in federal litigation during her eleven years of law practice and since 1977 has been the director of the reproductive freedom project of the American Civil Liberties Union. Benshoof claims to have been lead counsel in dozens of cases, supervised over a hundred cases, written several articles on the law in the area of abortion and contraceptive rights, offered expert testimony before state legislatures in Congress on the same, and published the ACLU legal guide to reproductive rights of women. Benshoof's work included preparing the briefs in opposition to *certiorari,* petitioner's cross petition for *certiorari,* as well as the briefs on the merits. Benshoof states that because of the enormous factual material, medical

research and precedential constitutional questions, that she worked on this case exclusively in the summer of 1982. She further contends that she was involved in this case beginning at the time of the original hearings before the Akron City Counsel in 1977, and in fact developed the ACLU testimony for those hearings. She states that she provided continuous backup legal work, witness help, and briefing, but nonetheless, she is submitting compensation only for the time spent on the Supreme Court litigation. Benshoof requests compensation at the rate of $175.00 per hour. Based upon the relevant community standard rule established by *Blum, supra,* and considering Benshoof's experience, the Court fixes the reasonable hourly rate for Benshoof's work at $125.00 per hour.

### 6. *Deborah Stavile.*

 Stavile states that she graduated from law school in 1979 and was admitted to the practice of law in New York in 1980. Stavile spent one year as a law clerk to the Honorable James Hunter, III of the United States Court of Appeals, Third Circuit. In 1980 she became associated in the practice of law with a private law firm in New York City, where she worked exclusively in litigation. Stavile states that her responsibilities are those required by litigation involving large and complex business problems for private and non-profit organizations. She states that specifically, she is involved in writing briefs and presenting oral argument of various issues involving constitutional law, antitrust law, securities law, commercial law, and civil procedure. She has participated in the drafting of *amicus* briefs to the Supreme Court of the United States in the *San Diego v. Metromedia, Inc.* case, and in the *Bob Jones University* and *Goldsboro Christian School* cases. In this case, Stavile was responsible for drafting the argument portion of the respondent's brief in support of the judgment of the Sixth Circuit striking down the portion of Akron's ordinance requiring parental consent before a physician, under threat of criminal penalty, could perform an abortion on a minor under age 15. Stavile requests

compensation at the rate of $100.00 per hour. Based upon the relevant community standard rule established by *Blum, supra,* and considering Stavile's experience, the Court fixes the reasonable hourly rate for Stavile's work at $80.00 per hour.

### 7. *Sylvia A. Law.*

 Law graduated from the New York University School of Law in 1968 and has served as a professor of law since 1973. She is licensed to practice law in the state of New York, state of Pennsylvania, the various federal district courts in those states, and before the Second and Third Circuit Courts of Appeal and the Supreme Court of the United States. Law has published a number of books and articles and has served as counsel in approximately ten major cases involving welfare and health issues. She presently teaches health and welfare law and is a member of the Board of National Health Law Program. Law seeks $175.00 an hour for her work in giving extensive advice on the plaintiffs' briefs filed in the Supreme Court of the United States and for reviewing and editing the same. Law requests an award of attorney fees at the rate of $175.00 per hour. Based upon the relevant community standard rule established by *Blum, supra,* and considering Law's experience, the Court fixes the reasonable hourly rate for Law's work at $125.00 per hour.

### 8. *Nan D. Hunter.*

 Hunter graduated from law school in 1975 and is admitted to practice law in the District of Columbia and the state of New York, as well as numerous federal district and appeals courts, and the Supreme Court of the United States. Since 1981 Hunter has been employed full time as a staff attorney with the reproductive freedom project of the American Civil Liberties Union in New York City. Hunter has extensive trial experience in cases involving abortion issues. Hunter was engaged in the preparation of the briefs submitted to the United States Supreme Court in this case. She seeks fees at the rate of

$150.00 per hour for her work. Based upon the relevant community standard rule established by *Blum, supra,* and considering Hunter's experience, the Court fixes the reasonable hourly rate for Hunter's work at $110.00 per hour.

### 9. *Lois Lipton.*

 Lipton is a graduate of DePaul College of Law, where she graduated first in her class. She was subsequently admitted to the practice of law in Kentucky and in Illinois, and has been admitted to practice in numerous federal district courts as well as the United States Court of Appeals for the Seventh Circuit and the United States Supreme Court. Lipton was employed by the Legal Aid Society of Louisville, Kentucky, as a staff attorney from 1974 to 1975. From 1975 to 1980 she served as staff counsel for the Roger Baldwin Foundation of the ACLU. She is currently director and counsel to the reproductive rights project of the Roger Baldwin Foundation of the American Civil Liberties Union in Chicago, Illinois. Lipton has been continuously engaged in the practice of civil rights and civil liberties law. She has served as counsel in a number of actions involving abortion legislation. Lipton was requested by Landsman to serve as his "second chair" for the oral argument in the United States Supreme Court. Lipton's work included review of the briefs and record in the case, a review of pertinent case law, and assistance at the oral arguments in the United States Supreme Court. Lipton requests an hourly rate of $100.00 an hour. Based upon the relevant community standard rule established by *Blum, supra,* and considering Lipton's experience, the Court fixes the reasonable hourly rate for Lipton's work at $100.00 per hour.

### 10. *Suzanne M. Lynn.*

 Lynn states that she has been engaged in the practice of law for seven years and is admitted in the state and district courts of New York, as well as the United States Courts of Appeals for the Second, Fourth, Fifth, Eighth, and Ninth Circuits, and the Supreme Court of the United States. Lynn is employed by the American Civil Liberties Union in New York City. She has been a staff attorney with the reproductive freedom project since September of 1979 and has participated in numerous abortion related cases. She assisted in the preparation of the brief before the United States Supreme Court, for which she requests compensation at the rate of $150.00 per hour. Based upon the relevant community standard rule established by *Blum, supra,* and considering Lynn's experience, the Court fixes the reasonable hourly rate for Lynn's work at $100.00 per hour.

### 11. *Gordon Beggs.*

 Mr. Beggs is a 1973 graduate of the University of Pennsylvania Law School and is legal director of the American Civil Liberties Union of Cleveland Foundation, Inc. He presently serves as managing attorney for the Cleveland ACLU Program. He is a member of the Bar of Ohio, United States District Court of Ohio, United States Court of Appeals for the Sixth Circuit, and United States Supreme Court. Beggs' work in this case included a brief amount of work on the case while it was before the Court of Appeals and participation in prosecuting the fee application. He requests $75.00 per hour for the work done in 1979 and 1980 and $100.00 an hour for the work done in 1983. The Court finds that Mr. Beggs' request is reasonable and fixes the reasonable hourly rate consistent with the request.

### 12. *Louis Jacobs.*

 Mr. Jacobs is presently employed by the Ohio State University College of Law where he is a tenured associate professor and a supervising attorney in the clinical programs. Mr. Jacobs has substantial experience in civil rights litigation. Mr. Jacobs has assisted in the prosecution of the fee application and requests $110.00 an hour for his work. The Court finds Mr. Jacobs' request is reasonable and fixes the

reasonable hourly rate consistent with the request.

## V. THE LODESTAR COMPUTATIONS

Based upon the determination of the Court as to the number of hours for which the plaintiffs' counsel is reasonably entitled to be compensated and the Court's determination as to reasonable hourly rate to be awarded the attorneys who have provided services, the following calculations apply:

### DISTRICT COURT

| Name | Hours Claimed | Success Reduction (20%) | Duplication Reduction (5%) | Net Hours | Hourly Rate | Lodestar Award |
|------|------|------|------|------|------|------|
| Landsman | 815 | 163 | 32.6 | 619.4 | 75 | 46,455. |
| Hawley | 508.4 | 101.6 | 20.3 | 386.5 | 60 | 23,190. |
| Roberts | 175 | 35 | 7 | 133. | 40 | 5,320. |
| Leitzer | 236 | 47.2· | 9.4 | 179.4 | 40 | 7,176. |
| Total | | | | | | $82,141. |

### SIXTH CIRCUIT

| Name | Hours Claimed | Success Reduction | Duplication Reduction | Net Hours | Hourly Rate | Lodestar Award |
|------|------|------|------|------|------|------|
| Landsman | 556.25 | – | – | 556.25 | 100 | 55,625. |
| Beggs | 14.5 | – | – | 14.5 | 75 | 1,087. |
| Total | | | | | | $56,712. |

### SUPREME COURT

| Name | Hours Claimed (Fee App.Hrs.) | Hours Allowed [8] | Hourly Rate | Lodestar Award |
|------|------|------|------|------|
| Landsman | 960.30 (15.25) | 676.7 | 125 | 84,587. |
| Benshoof | 527.05 (–0–) | 368.9 | 125 | 46,112. |
| Stavile | 83.25 (–0–) | 58.2 | 80 | 4,656. |
| Law | 27.7 (1.2) | 19.7 | 125 | 2,462. |
| Hunter | 101.75 (2.5) | 71.9 | 110 | 7,909. |
| Lipton | 100 (–0–) | 70 | 100 | 7,000. |
| Lynn | 149.80 (3.25) | 105.95 | 100 | 10,595. |
| Total | 1948.85 | 1371.3 | | $163,321. |

### Fee Application

| Name | Hours Claimed | Hours Allowed | Hourly Rate | Lodestar Award |
|------|------|------|------|------|
| Beggs | 20.75 | 20.75 | 75 | 1556. |
| | 72.75 | 72.75 | 100 | 7275. |
| Jacobs | 43.5 | 43.5 | 110 | 4785. |
| Total | | | | $13,616. |

8. The Court applied the reduction to the total hours claimed less the hours devoted to preparing the fee application.

## VI. CONSIDERATION AND COMPUTATION OF AN ENHANCEMENT OR MULTIPLIER AWARD

The fee applications request a multiplier of .32 for the District Court work because of the passage of time. Additionally, the applications request an additional multiplier of .4 for all work done at the District Court, Circuit Court, and Supreme Court.

■ The Court concludes that a multiplier of .4 is appropriate for the legal services rendered at the District Court level. The award of fees has been delayed for a number of years. Moreover, the Court is of the view that work at the District Court level in a controversial atmosphere as represented by this case merits an enhancement consistent with the views expressed in *Hensley v. Eckerhart, supra.*

■ The Court recognizes that the plaintiffs enjoyed great success by reason of the appellate work. Enhancement might be appropriate but for the fact that counsel devoted, even with the reductions applied by the Court, an extraordinary number of hours to the appellate effort. In this case, the lodestar figure for the appellate work substantially exceeds the lodestar figure for the District Court work. Moreover, it is apparent that the legal services provided at the appellate level were performed by attorneys who were not at risk with respect to payment for their services. In the Court's view, enhancement is particularly appropriate in those situations where the lawyers undertake difficult issues in a civil rights setting under circumstances where compensation payable to the lawyer is directly related to success or lack of success.[9] In this case, the many lawyers working on behalf of the plaintiffs at the appellate level were not in that category. For the foregoing reasons, the Court declines to enhance the lodestar figure for the appellate work.

### COMPUTATION OF THE ENHANCEMENT AWARD

#### For District Court Work

| Name | Lodestar Award | Enhancement Award | Total Award |
|------|------|------|------|
| Landsman | 46,455.00 | 18,582.00 | $ 65,037.00 |
| Hawley | 23,190.00 | 9,276.00 | 32,466.00 |
| Roberts | 5,320.00 | 2,128.00 | 7,448.00 |
| Leitzer | 7,176.00 | 2,870.00 | 10,046.00 |
| Total District Court Award | | | $114,997.00 |

## VII. APPLICATION FOR AWARD OF COSTS

Plaintiffs also seek costs and expenses itemized as follows:

1. Costs sought per the 1979 motion $4,079.35

2. Costs & expenses detailed by attorney Benshoof 9,373.38

3. Expenses detailed by administrator Wohl (Filed 8–4–83) 4,375.20

4. Supplemental Bill of Costs 3,102.83

5. Order of the United States Supreme Court 300.00

Total $21,230.76

9. The Court recognizes footnote eighteen in *Blum v. Stenson,* —— U.S. ——, 104 S.Ct. 1541, 1550, 79 L.Ed.2d 891 (1984) may well be considered inapposite to this view.

■ No objection has been raised with respect to the costs sought based upon the 1979 motion. The expenses detailed by Max R. Wohl as the legal coordinator of the ACLU of Cleveland Foundation, Inc. relate to out of pocket expenses of the ACLU beginning in 1978 through 1983, and relate to travel, hotel, and meal expenses for the various counsel participating in this litigation. The expenses submitted by attorney Benshoof relate to the Supreme Court filing fee, printing costs, additional transportation expenses, and federal express expenses between counsel in Washington, D.C., Ohio, and New York. On 42 separate occasions beginning on January 11, 1982 through September 13, 1982, Federal Express expenses were incurred in the total sum of $1,318.00. The Court finds insufficient justification for these expenses. This Court will allow $126.00 for mailing expenses and discount the Federal Express expense accordingly. All other requests for costs are approved, so that the application for costs and expenses is approved in the total sum of $20,038.76.

## VIII. DIVISION OF THE AWARD BETWEEN THE DEFENDANT CITY OF AKRON AND THE INTERVENORS

■ By the Court's order filed June 18, 1984, 604 F.Supp. 1268, the issue of whether the intervenors should be required to share with Akron in the payment of plaintiffs' attorney fees was discussed and decided. In determining how the award of attorney fees and expenses should be allocated between Akron and the intervenors, the Court has scanned the transcript of testimony before the District Court, and notes that Akron enjoyed the assistance of counsel for the intervenors in presenting a defense to plaintiffs' action. That assistance continued throughout the appellate proceedings. The issues raised by the intervenors were narrow in scope. However, the plaintiffs were required to do additional work and incur additional expense by virtue of the intervention.

Taking into consideration the benefit accruing to Akron by reason of the assistance of counsel provided by the intervenors and the narrow scope of the intervention, the Court orders that the intervenors pay five percent of the award for fees and costs, and that the defendant, the City of Akron, pay the remaining ninety-five percent of the award.

## IX. SUMMARY OF AWARD OF ATTORNEY FEES AND COSTS

Based upon the foregoing, the defendant Akron and intervenors are ordered, on the basis of a 95–5% allocation, pursuant to the entry to be prepared and filed in accordance with this summary, to make the following payments:

### DISTRICT COURT

| | | |
|---|---|---:|
| 1. | Landsman | $ 65,037.00 |
| 2. | Hawley | 32,466.00 |
| 3. | Roberts | 7,448.00 |
| 4. | Leitzer | 10,046.00 |
| | Total | $114,997.00 |

### CIRCUIT COURT

| | | |
|---|---|---:|
| 1. | Landsman | $ 55,625.00 |
| 2. | Beggs | 1,087.00 |
| | Total | $ 56,712.00 |

### SUPREME COURT

| | | |
|---|---|---:|
| 1. | Landsman | $ 84,587. |
| 2. | Benshoof | 46,112. |
| 3. | Stavile | 4,656. |
| 4. | Law | 2,462. |

| | | |
|---|---|---|
| 5. Hunter | . | 7,909. |
| 6. Lipton | | 7,000. |
| 7. Lynn | | 10,595. |
| Total | | $ 163,321. |

### For Fee Application

| | | |
|---|---|---|
| 1. Beggs | | $ 8,831. |
| 2. Jacobs | | 4,785. |
| Total | | $ 13,616. |
| Total fee allowed | | $ 348,671. |

### Costs

| | |
|---|---|
| Total | $ 20,038.76 |

### Total Award

| | |
|---|---|
| Total Award | $368,709.76 |

## DIRECTIONS TO COUNSEL

Counsel for the plaintiffs are directed to prepare and forward to the Court for its approval an appropriate judgment entry dividing the above award as to attorney fees and costs among the payees who are to receive the funds awarded. The entry shall provide for interest at the legal rate to commence on the date the judgment entry is filed.

Counsel for the plaintiffs shall forward a copy of the entry to counsel for the defendants contemporaneously with the forwarding to the Court of the proposed judgment entry. The Court will entertain objections to the proposed judgment entry as to form, not substance, providing the same are filed within a period of seven days.

IT IS SO ORDERED.

### APPENDIX 1

### TABLE OF CONTENTS

#### Lodged Documents

UNITED STATES GOVERNMENT STATISTICS;
MEDICAL & SCIENTIFIC ARTICLES

| Document # | Documents |
|---|---|
| 1. | Cates, W., "Legal Abortion and Women's Health: Gains and Losses in the 1970's," study in record in *Planned Parenthood of Kansas City, Missouri v. Ashcroft*, U.S. S.Ct. No. 81–1255 (Pl. Exh. 3 to Cates Deposition, Df. Exh. 1, Transcript on Remand, offered p. 145, admitted pp. 145, 146); subsequently published as "Legal Abortion: the Public Health Record," *Science*, March 26, 1982: 1586–1590. |
| 2. | U.S. Department of Health and Human Services, Public Health Service, Centers for Disease Control, *Abortion Surveillance 1978*, November, 1980, study in record in *Planned Parenthood of Kansas City, Missouri v. Ashcroft*, U.S. S.Ct. No. 81–1255 (Pl. Exh. 4 to Cates Deposition, Df. Exh. 1, Transcript on Remand, offered p. 145, admitted pp. 145, 146); excerpts, pp. 1–12, 43, 48, 49. |
| 3. | Cates, W. and Grimes, D.A., "Deaths from Second Trimester Abortion by Dilatation and Evacuation: Causes, Prevention, Facilities," *Obstetrics and Gynecology*, 58/4: 401–408, October, 1981, article in record in *Planned Parenthood of Kansas City, Missouri v. Ashcroft*, |

| Document # | Documents |
|---|---|

U.S. S.Ct. No. 81–1255 (Pl. Exh. 2 to Cates Deposition, Df. Exh. 1, Transcript on Remand, offered p. 145, admitted pp. 145, 146).

4. Lebolt, S.A. et al., "Mortality from Abortion and Childbirth: Are the Populations Comparable?" *Journal of the American Medical Association* 248/2: 188–191, July, 1982.

5. Cates, W. et al., "Mortality from Abortion and Childbirth: Are the Statistics Biased?" *Journal of the American Medical Association* 248/2: 192–196, July, 1982.

6. Henshaw, S.K. et al. "Abortion 1977–1979: Need and Services in the United States, Each State and Metropolitan Area," The Alan Guttmacher Institute, New York, 1981; excerpts pp. 1, 3, 4, 5, 23–29, 33, 36, 39.

7. Henshaw, S.K., et al., "Abortion Services in the United States, 1979 and 1980," *Family Planning Perspectives* 14/1: 5–15, January/February, 1982.

8. Cates, W. et al., "Sounding Board: Regulation of Abortion Services—For Better or Worse?" *New England Journal of Medicine* 301: 720–723, September 27, 1979.

9. Grimes, D.A. and Cates, W., "Dilatation and Evacuation," Chapter 10 in Berger, G. et al., *Second Trimester Abortion: Perspectives After a Decade of Experience*, John Wright, P.S.G. Inc., Boston 1981.

10. Grimes, D.A. et al., "Abortion Facilities and the Risk of Death," *Family Planning Perspectives* 13/1: 30–32, January/February, 1981.

11. Tietze, C., *Induced Abortion, A World Review, 1981* 4th Edition, The Population Council, N.Y. 1981; excerpts pp. 83–89.

12. Cates, W., "Late Effects of Induced Abortion; Hypothesis or Knowledge?" *The Journal of Reproductive Medicine* 22/4: 207–212, April, 1979.

13. Chung, C.S. et al., "Induced Abortion and Spontaneous Fetal Loss in Subsequent Pregnancies," *American Journal of Public Health* 72/6: 548–554, June 1982.

14. Alan Guttmacher Institute, *Teenage Pregnancy: The Problem That Hasn't Gone Away*, 1981; excerpts pp. 4, 5, 22–35, 50, 53–55, 57.

15. Cates, W., "Adolescent Abortions in the United States," *Journal of Adolescent Health Care* 1:18–25, 1980.

16. Adams, M.S. and Neel, J.V., "Children of Incest," *Pediatrics* 40/1:55–62, July, 1967.

17. Lupfer, M. and Silber, B.G., "How Patients View Mandatory Waiting Periods for Abortion," *Family Planning Perspectives* 13/2:75–79, March/April, 1981.