Floydist James MARTIN, et
al., Plaintiffs,

v.

Ray MABUS, Governor of Mississippi,
et al., Defendants.

Henry KIRKSEY, et al., on Behalf of
Themselves and all Others Similarly
Situated, Plaintiffs,

v.

Ray MABUS, Governor of Mississippi,
et al., Defendants.

Civ. A. Nos. J84–0708(B), J85–0960(B).

United States District Court,
S.D. Mississippi,
Jackson Division.

Feb. 27, 1990.

Ellis Turnage, Morris and Turnage, Cleveland, Miss., Julius L. Chambers, NAACP Legal Defense Fund, New York City, Robert B. McDuff, Lawyers' Committee for Civil Rights, Washington, D.C., Pamela S. Karlan, NAACP Legal Defense & Ed. Fund, Inc., New York City, Lynda C. Robinson, Jackson, Miss., for plaintiffs.

James Craig, Jackson, Miss., for Hinds County Democratic Executive Comm.

Charles H. Evans, Jackson, Miss., for Hinds County Repub. Ex. Comm.

Stephen J. Kirchmayr, Office of Atty. Gen., Jackson, Miss., for State defendants.

Hubbard T. Saunders, IV, Crosthwait Terney & Noble, Jackson, Miss., for State defendants and Yazoo County Election Comm.

Wiley J. Barbour, Henry Barbour & Decell, Yazoo City, Miss., for Yazoo County Republican Exec. Comm.

Carroll Rhodes, Hazlehurst, Miss., Johnnie L. Walls, Jr., Walls Buck & Irving, Greenville, Miss., Samuel Issacharoff, Guerrieri Edmond James, University of Tx. Law School, Austin, Tex., for Kirksey, et al., plaintiffs.

Stephen L. Thomas, Mansour and Thomas, Greenville, Miss., Landman Teller, Jr., Teller Chaney & Rector, Vicksburg, Miss., for defendants.

## MEMORANDUM OPINION AND ORDER

BARBOUR, Chief Judge.

This cause is before the Court on Motion of the consolidated Plaintiffs for an award of attorney's fees and litigation expenses pursuant to both Section 14(e) of the Voting Rights Act, 42 U.S.C. § 1973*l* (e), and the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988. The Defendant has responded to the Motion. The Court, having considered the Motion and response, together with memoranda of authorities, affidavits and other attachments thereto submitted by the parties, makes these findings of fact and draws these conclusions of law:

### FACTUAL BACKGROUND

Invoking the Court's federal question and civil rights subject matter jurisdiction, the named *Martin* and *Kirksey* plaintiffs, black citizens and registered voters of the State of Mississippi, brought these two consolidated voting rights actions individually and on behalf of two Fed.R.Civ.P. 23(b)(2) plaintiff classes challenging the at-large, numbered-post methods used to elect the county judges in Harrison, Hinds and Jackson Counties, Mississippi. Plaintiffs also challenged the multi-member district method used to elect chancellors and circuit judges from separate places in certain Mississippi Chancery and Circuit Court Districts.

The Plaintiffs further alleged that the challenged Mississippi election statutes violated their rights secured by sections 2 and 5 of the Voting Rights Act of 1965, as amended in 1982, 42 U.S.C. § 1973, the fourteenth and fifteenth amendments to the United States Constitution, and 42 U.S.C. § 1983, in that said state election statutes (1) had not been precleared as allegedly required by section 5, (2) were allegedly adopted and were allegedly being maintained for the racially discriminatory purpose of diluting, minimizing, and cancel-

ling out black voting strength, and (3) allegedly resulted in a denial or abridgement of the right of plaintiffs and other black citizens to elect candidates of their choice.

The Plaintiffs requested and were granted the convening of a three-judge district court to hear and determine their section 5 claims. By order filed on April 3, 1986, the three-judge district court determined that section 5 of the Voting Rights Act of 1965 applied to the election of state court judges and enjoined the defendants from implementing the challenged statutes unless and until they were precleared under section 5. *Kirksey v. Allain*, 635 F.Supp. 347 (S.D. Miss.1986). The panel, by order of May 28, 1986, granted the plaintiffs' motion for preliminary injunction and enjoined the defendants from conducting elections for the offices of circuit and chancery judge in the challenged districts in the State of Mississippi and for the office of county judge only in the counties of Harrison, Hinds and Jackson.

By letter dated July 1, 1986, the U.S. Attorney General interposed a section 5 objection to the utilization of the post feature for the election of judges in certain judicial districts which became multi-judge for the first time after November 1, 1964, the effective date of section 5 coverage for Mississippi. The section 5 claims were thereafter disposed of by consent decree, and the injunction of the three-judge panel was lifted.

With regard to the Plaintiffs' section 2 claims, this Court initially enjoined judicial elections statewide. Following discovery, the consolidation of the *Martin* and *Kirksey* actions pursuant to Fed.R.Civ.P. 42, a pretrial conference, and entry of a pretrial order, these cases were tried before the United States District Judge, without a jury, from March 9 to March 13, 1987, in Jackson, Mississippi. After considering the evidence and arguments of counsel, the Court held that the Plaintiffs had established a section 2 violation in the 5th, 7th, 9th, and 11th Chancery Court Districts, the 4th, 7th, and 11th Circuit Court Districts

and the Hinds County Court District. The Court held, however, that in spite of specific findings of racial bloc voting and other factors regarding the remaining districts, the 14th Chancery Court District, the 9th and 16th Circuit Court Districts, and the Harrison County and Jackson County Court Districts, there was no section 2 violation as to those districts because the Court could not establish an appropriate remedy because blacks were not in such concentrations as to constitute a sufficiently large and geographically compact group for which single-member districts of substantially equal population could be drawn.[1]

Thereafter, the Court held a hearing to determine the proper remedies to be implemented to correct the section 2 violations regarding judicial elections in the violating districts. After receiving alternative proposals, the Court, after consultation with a court-appointed expert, adopted a plan whereby the multi-member, at-large election districts were divided into single-member subdistricts, with one judge to be elected from each. The statewide injunction was thereafter lifted, and elections were ordered in compliance, where respectively applicable, with the consent decree, the remedial plan of the Court, or state law.

## THE FEE QUESTION: LEGAL ISSUES

The entitlement of the Plaintiffs to a court award of reasonable attorney's fees and litigation expenses, or lack thereof, is determined by reference to both section 14(e) of the Voting Rights Act, 42 U.S.C. § 1973*l* (e), and the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988. 42 U.S.C. § 1973*l* (e) provides:

> In any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendments, the Court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

Likewise, section 1988 provides in relevant part:

---

1. The section 2 litigation involved 10 of the 40 Circuit and Chancery Court districts and 3 of the 23 County Court districts in the State of Mississippi.

In any action or proceeding to enforce a provision of sections 1981, 1982, 1984, 1985, and 1986 of this title, title IX of public law 92–318, or title VI of the Civil Rights Act of 1964, the Court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorneys' fee as part of the costs.

In enacting both of these statutes, Congress directed that prevailing parties "should ordinarily recover an attorneys' fee unless special circumstances would render an award unjust." S.Rep. No. 94–295, 94th Cong., 1st Sess. 40 (1975), *reprinted in* 1975 U.S.Code Cong. & Admin.News 774, 807 (Section 1973*l* (e)); S.Rep. No. 94–1011, 94th Cong., 2d Sess. 4 (1976), *reprinted in* 1976 U.S.Code Cong. & Admin.News 5908, 5912.

The Plaintiffs have submitted their fee and expense request which, with a claimed enhancement, totals $1,321,297.68, in response to which the Defendants have alleged a plethora of "special circumstances" which they claim render an award of the amount sought by the Plaintiffs unjust. At the outset, therefore, the Court will address the legal objections raised by the Defendants and will then set forth a computation of the reasonable fees and expenses to which the Court finds the Plaintiffs are entitled.

■ 1. *Are the Plaintiffs "prevailing parties"?* The standard for determining whether or not a party has prevailed in the context of civil rights litigation was recently set forth in *Texas State Teachers Association v. Garland Independent School District*, 489 U.S. ——, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989), wherein the Supreme Court rejected the "central issue" test that had been used by the Fifth, Eleventh and apparently the Sixth Circuits and adopted the "any significant issue" test used by the other courts of appeals. The Court held that in determining whether a civil rights plaintiff is a prevailing party, "the touchstone of the inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute. Where such

a change has occurred, the degree of he plaintiff's overall success goes to the reasonableness of the award under *Hensley* [*v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) ], not to the availability of a fee award vel non." *Garland*, 489 U.S. at ——, 109 S.Ct. at 1494, 103 L.Ed.2d at 878.

■ In the instant case, the Plaintiffs have been overwhelmingly successful. The Defendants concede that the Plaintiffs are "prevailing parties," within the meaning of the act, but assert that the lodestar amount should be adjusted downward because of the allegedly "limited success" of the Plaintiffs. In support of their argument, the Defendants have listed a number of matters on which the Court held against the Plaintiffs.

■ In *Hensley, supra,* the Supreme Court established a comprehensive analytical framework for determining the effect of the prevailing party's partial success in the litigation on the calculation of a reasonable fee award under § 1988. The Court announced a two-step approach to the determination of whether some reduction in the lodestar figure is required because of the partial success of the prevailing party. In the first step of the analysis, the district court identifies unsuccessful claims that are wholly unrelated to successful claims in the litigation, and then excludes ˙from the fee application claimed hours associated with those unsuccessful claims. At the second step, the court determines whether a further reduction in the fee award should be imposed because plaintiff's success on the remaining interrelated unsuccessful and successful claims was limited. In determining whether the claims are related or unrelated, the Court in *Hensley* noted:

It may well be that cases involving such unrelated claims are unlikely to arise with great frequency. Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation

as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

461 U.S. at 435, 103 S.Ct. at 1940. From the foregoing, the Court gleans three separate circumstances, the existence of any one of which will cause the Court to deem the claims "related." They are: (1) a "common core of facts," (2) "related legal theories," and (3) the devotion of time "generally to the litigation as a whole." The Court finds all three of these circumstances to be present in the instant litigation. Accordingly, the Court finds the claims to be related and moves to the second stage of the *Hensley* analysis. The Court assumes, *arguendo*, that there exist some "claims" on which the Plaintiffs did not prevail.[2] The next step is for the Court to inquire whether the plaintiff achieved a "level of success" on the related claims that warrants full compensation for all the remaining hours in the fee petition. According to the Court in *Hensley:*

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. *In these circumstances, the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.*

461 U.S. at 435, 103 S.Ct. at 1940 (emphasis added). In *Garland, supra,* the Court noted that where the Plaintiffs' claims arise out of a common core of facts, and involve related legal theories, the most critical factor of the inquiry is the degree of success obtained. 489 U.S. at ——, 109 S.Ct.

at 1491, 103 L.Ed.2d at 875. As has been stated and as is reflected in the record, the Plaintiffs were extraordinarily successful in this suit. This Court rendered the first decision in the United States holding that at-large judicial elections violate section 2 of the Voting Rights Act. The Plaintiffs obtained relief in twenty-seven different judicial districts in Mississippi (eight of which were found to violate section 2, and 19 of which were found to violate section 5). Under these circumstances, there is no merit to the Defendants' argument that the lodestar be reduced for limited success simply because the Plaintiffs were not successful in obtaining relief in every judicial district where they claimed a violation existed.

■ 2. *Are a portion of the Plaintiffs' fee claims barred by rule 68 of the Federal Rules of Civil Procedure?* Rule 68 of the Federal Rules of Civil Procedure provides in relevant part that an adverse party may offer to allow judgment to be taken against him or her "with costs then accrued." If the offer is rejected and the judgment finally obtained by the offeree is less favorable than the offer, "the offeree must pay the costs incurred after the making of the offer." Because the Attorney's Fees Awards Act provides that attorneys' fees are allowed "as a part of the costs," the Supreme Court has held that rule 68 acts to shift not only "costs" as that term is typically understood, but also attorneys' fees. *Marek v. Chesny,* 473 U.S. 1, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985). The Defendants assert here that on October 3, 1986, three months before the trial on liability, the Plaintiffs and Defendants filed a joint motion for approval and adoption of a proposed consent judgment, which purported to settle the section 2 claims of the plaintiffs statewide. The Defendants claim that the Plaintiffs' attorneys "sabotaged" the consent decree by claiming just prior to entry of the decree that the claims asserted by their clients were not statewide, encom-

---

**2.** The Court notes, for example, that the Plaintiffs were not successful on their section 2 claims with regard to certain judicial voting districts, especially the 14th Chancery Court District, the 9th and 16th Circuit Court Districts, and Harrison and Jackson County, because the Court found that those districts lacked sufficient concentrations of black citizens to constitute a sufficiently large and geographically compact group for which single-member districts of substantially equal population may be drawn.

passing only the western part of the state, and thus they were in no position to settle claims statewide. The Defendants also claim that the relief finally obtained by the Plaintiffs was less favorable than that offered by the proposed consent decree in that the consent decree would have imposed section 2 liability on more districts than were finally determined to be in violation of section 2.

■ The Court is of the opinion that no rule 68 offer was made under the circumstances of this case. First, as the Defendants admit, in this rule 23(b)(2) class action, the procedures prescribed by rule 68 for making an offer of judgment are literally inapplicable because rule 23(e) requires that court approval be obtained in order for a case to be dismissed or compromised. *Gay v. Waiters' & Dairy Lunchmen's Union, Local No. 30*, 86 F.R.D. 500 (N.D.Cal. 1980); Fed.R.Civ.P. 23(e). In fact, it was the Court, not the Plaintiffs' attorneys who denied approval of the proposed consent judgment by order dated December 12, 1986, noting that objections had been filed and that the parties were in disagreement about the proper scope of the consent judgment. Second, the Court finds that the proposed consent judgment was not intended to be a rule 68 offer of judgment. By the very terms of rule 68, the offer of judgment is unilateral. There is no evidence of such a unilateral offer in the instant case. Likewise, there is no evidence that the Defendants ever identified the proposed consent judgment as a rule 68 offer of judgment. By thus failing to invoke rule 68 at any time during the negotiating process, defendants forfeited the right to recharacterize the proposed consent judgment as a rule 68 offer. Third, in complex cases such as the one *sub judice*, involving injunctive relief, there is a fundamental question whether rule 68 may, under any circumstances, properly foreclose the recovery of statutory attorney's fees. *See Marek*, 473 U.S. at 32–33 n. 48, 105 S.Ct. at 3029 n. 48 (Brennan, J., dissenting); *Garrity v. Sununu*, 752 F.2d 727 (1st Cir. 1984) (court noted in dicta that rule 68 is usually invoked where offer and judgment "involve two precise and easily comparable

sums of money," rather than choice between different sets of injunctive provisions whose relative benefit to the plaintiffs cannot be assessed in monetary terms).

In any event, and finally, the Court is unconvinced that the relief ultimately obtained was less favorable than the relief that the proposed consent judgment would have awarded. Although the consent judgment would have allowed relief under section 2 in one county court district, four chancery court districts, and five circuit court districts, it also contained a provision requiring plaintiffs to relinquish all of their claims under section 5, on which the Plaintiffs ultimately prevailed. After the Court decided not to approve the proposed consent judgment, the plaintiffs and their attorneys continued to oppose anti-single-shot voting provisions in the Justice Department, and the Justice Department in fact refused to preclear those provisions. Subsequently, the plaintiffs won an order from the three-judge court directing that special elections be held in nineteen chancery and circuit court districts in Mississippi without anti-single-shot voting provisions which the Attorney General had declined to preclear.

Alternatively, the Defendants assert that quite apart from the operation of rule 68, the prevailing plaintiffs' unreasonable rejection or "sabotaging" of the proposed consent judgment is a basis for a reduced fee award within the established lodestar adjustment methodology, *see Hensley, supra*, because hours expended on the suit by plaintiffs' counsel after rejecting a reasonable offer that ends up being more favorable than the final judgment on the case may fairly be characterized as unnecessary hours that should be eliminated from the fee petition. Because the Court cannot find that the relief ultimately obtained was less favorable than that offered, this argument must be rejected.

■ 3. *Is Robert B. McDuff entitled to fees during the time period he was employed by the State of Mississippi as a law professor at the University of Mississippi School of Law?* The Defendants argue

without authority that "it would be manifestly unjust to require the State of Mississippi to pay McDuff's fees for litigation while he was a salaried employee of the State of Mississippi." The overwhelming weight of precedent is against the Defendants on this issue. *See, e.g., Shadis v. Beal,* 685 F.2d 824 (3d Cir.) (rejecting argument that state could not be made to pay state-supported legal services attorney twice), *cert. denied,* 459 U.S. 970, 103 S.Ct. 300, 74 L.Ed.2d 282 (1982); *Dennis v. Chang,* 611 F.2d 1302 (9th Cir.1980) (state-supported legal aid society awarded fee for lawsuit against state agency—"question of fairness has been resolved by the Congress [in Fee Awards Act]"); *Akron Center for Reproductive Health v. City of Akron,* 604 F.Supp. 1275, 1291–92 (N.D.Ohio 1985) (court awarded fees to law professor at state-supported college in litigation against city of Akron). The Plaintiffs have also submitted the affidavits of law professors from various state-supported American law schools who stated that they have been awarded fees pursuant to section 1988 in suits against state agencies or officers. The Plaintiffs have also submitted affidavits from professors and administrators at the University of Mississippi School of Law who state that it is the policy of the law school to encourage professors to be involved in litigation so long as such involvement does not interfere with their duties at the law school. The fact that McDuff represented a client in an action against the State is immaterial. The Court accordingly finds that the contention of the Defendants is without merit.

■ 4. *Are the Plaintiffs entitled to compensation for their efforts in opposing preclearance before the Justice Department?* The Defendants claim that the Plaintiffs' attorneys should not be compensated for hours spent in lobbying efforts before the Justice Department. The Plaintiffs respond that the Defendant's proposed reduction figure should itself be reduced because some of that time was spent in litigation and not lobbying. The Plaintiffs further allege that the time spent in lobbying is compensable because it "was both useful and of a type ordinarily neces-

sary to advance the civil rights litigation to the stage it reached before [disposition]." *Webb v. Board of Education of Dyer County,* 471 U.S. 234, 243, 105 S.Ct. 1923, 1928, 85 L.Ed.2d 233 (1985). The Court finds that the Plaintiffs are not entitled to compensation for their time spent in purely administrative activities before the Justice Department, as opposed to litigation. The wording of the fee statute itself is instructive. The rule provides that "in any action or proceeding ..." a fee may be awarded "... as part of the costs." Fees incurred for time spent lobbying the Justice Department are not a "part of the costs" of a separate civil rights action, nor is such a lobbying effort conducted in an "action or proceeding." *See Webb,* 471 U.S. at 242, 105 S.Ct. at 1928 (time compensable is only time spent *on the litigation*); *Leroy v. City of Houston,* 831 F.2d 576, 582–83 (5th Cir.1987) (finding preclearance activities non-compensable as a matter of law), *cert. denied,* 486 U.S. 1008, 108 S.Ct. 1735, 100 L.Ed.2d 199 (1988); *Arriola v. Harville,* 781 F.2d 506 (5th Cir.) ("[T]he preclearance submission is separate from the lawsuit. The participants are not the same. The preclearance process is in a different forum. It follows different law. [I]t is not a judicial proceeding at all."), *cert denied,* 479 U.S. 820, 107 S.Ct. 84, 93 L.Ed.2d 38 (1986); *Gerena–Valentin v. Koch,* 739 F.2d 755 (2d Cir.1984) (concluding that neither language nor legislative history of attorney's fee provision showed congressional intent to award attorney's fees for activities solely connected to preclearance process).

■ 5. *May the Plaintiffs recover expert witness expenses in excess of the statutory thirty-dollar-per-day limit?* Plaintiffs request reimbursement for expert witness fees in the amount of $78,395.57. Defendants object that, under the Supreme Court's recent decision in *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1988), the Plaintiffs are entitled only to the statutory witness fees of thirty dollars per day provided by 28 U.S.C. §§ 1821(b) and 1920. Plaintiffs respond that the use of experts

was essential to their success in this action and that expenses for these witnesses should be allowed as part of the reasonable attorneys' fee. Additionally, the Plaintiffs argue that they are entitled to their full witness fees pursuant to Fed.R.Civ.P. 37(c) which provides for a shifting of expenses onto a party who fails to admit a matter which his opponent later proves. Rule 37(c) imposes no dollar limit.

Section 1988 has been construed, as a general rule, to allow reimbursement for all reasonable out-of-pocket expenses incurred by prevailing counsel which normally are charged separately to fee-paying clients and which are not incorporated as part of office overhead into the attorney's billing rates.[3] In *Crawford* the Supreme Court held that, "absent explicit statutory or contractual authorization for the taxation of costs, federal courts are bound by the limitations set out in 28 U.S.C. §§ 1821 and 1920." Although the *Crawford* Court expressly reserved the question of whether expert witness fees could be reimbursed under section 1988, a number of lower courts, including the Fifth Circuit Court of Appeals, have held that *Crawford* prohibits reimbursement of expert witness fees in excess of the statutory limit. *See West Virginia Univ. Hosp., Inc. v. Casey*, 885 F.2d 11 (3d Cir.1989), *cert. granted*, —— U.S. ——, 110 S.Ct. 1294, 108 L.Ed.2d 472 (1990); *Denny v. Westfield State College*, 880 F.2d 1465 (1st Cir.1989); *Sevigny v. Dicksey*, 846 F.2d 953, 959 (4th Cir.1988); *Glenn v. General Motors Corp.*, 841 F.2d 1567, 1575 (11th Cir.1988); *Boring v. Kozakiewicz*, 833 F.2d 468, 474 (3d Cir.1987); *Leroy v. City of Houston*, 831 F.2d 576, 584 (5th Cir.1987), *cert. denied*, 486 U.S. 1008, 108 S.Ct. 1735, 100 L.Ed.2d 199 (1988). *But see Friedrich v. City of Chicago*, 888 F.2d 511 (7th Cir.1989). The *Leroy* case is controlling precedent in this jurisdiction. *Leroy* holds that *Crawford* does not permit expert fees to be awarded without reference to the statutory duarchy of sections 1821 and 1920. 831 F.2d at 584.

With regard to the rule 37(c) argument of the Plaintiffs, the Court finds that it is not well taken. First, the Court notes that the Plaintiffs have wholly failed to properly itemize and relate the specific hours expended by the experts to the specific allegations that the Defendants refused to admit and which form the basis of the rule 37(c) argument. Rather, the Plaintiffs state generally that *all* of their experts' expenses incurred during the liability phase of the trial should be shifted onto the Defendants. Second, the Court finds that with regard to proof of past official discrimination in Mississippi, rule 37(c)(2) applies. That is to say, the time and effort required to prove the allegation of past discrimination is trivial because many reported cases have found that fact to exist. *See Bateman v. Standard Brands, Inc.*, 9 F.R.D. 555 (W.D.Mo.1949). Third, several of the requests called for an admission of matters on which the Defendants had reasonable ground to believe that they might prevail. *See* Fed.R.Civ.P. 37(c)(3). For example, one request asked the Defendants to admit that Hinds and Yazoo Counties and the State of Mississippi are officially discriminating against blacks at the present time. The Defendants may well have believed that the Plaintiffs could not prove that fact in court. Finally, there are "other good reasons for the failure to admit." *See* Fed.R.Civ.P. 37(c)(4). Where the party served with an admission does not have, and could not obtain by reasonable inquiry, the information on whether the matter contained in the request was true or not, there exist "other good reasons for the failure to admit." 8 C.A. Wright and A.R. Miller, *Federal Practice and Procedure* § 2290 at 805–806 (1970). For example, the Plaintiffs requested the Defendants to admit that "numerous white voters vote for white candidates simply because they are white and against black candidates because they are black." The Defendants, in order to respond to that request, would be required to go beyond a

---

**3.** For this reason, the Court finds that no "expert fees" can be properly awarded to the Plaintiff Henry Kirksey. The Court takes judicial notice of the fact that it would be patently absurd for a lawyer to charge his client a witness fee for the client's own testimony and then pay that fee back to the client.

"reasonable inquiry," and cannot be penalized for failure to admit such.

Indeed, the Court believes that this argument of the Plaintiffs is but one example of how *both* sides have overlitigated this fee question, at great expense and time to themselves and all concerned.

In sum, the Court finds that the Plaintiffs may not recover expert fees or other expert witness expenses without reference to the limits established in section 1821.

■■■ 6. *Are the Plaintiffs entitled to compensation at current, as opposed to historic rates as an enhancement for delay in payment?* Lower federal courts have widely recognized the appropriateness of applying an upward adjustment to the lodestar fee figure in cases which involve protracted litigation that delays the payment of attorneys' fees for a number of years. *See, e.g., Van Ooteghem v. Gray,* 774 F.2d 1332, 1338 (5th Cir.1985); *Graves v. Barnes,* 700 F.2d 220 (5th Cir.1983). Considerations of efficiency and convenience, however, favor the use, in calculating the lodestar, of current market-value rates in effect at the time the fee award is determined for the experience levels possessed by the attorneys at the time the services were rendered. *See Institutionalized Juveniles v. Secretary of Pub. Welfare,* 758 F.2d 897, 923 n. 41 (3d Cir.1985); *Graves v. Barnes,* 700 F.2d at 224; *Copper Liquor, Inc. v. Adolph Coors Co.,* 684 F.2d 1087, 1096 n. 26 (5th Cir.1982), *mod. in part on other grounds,* 701 F.2d 542 (5th Cir.1983) *(en banc), overruled on other grounds, Int'l Woodworkers v. Champion Intern.,* 790 F.2d 1174, 1175 (5th Cir.1986); *Gates v. Collier,* 616 F.2d 1268, 1276 (5th Cir.1980); *Henry v. First Nat'l Bank of Clarksdale,* 603 F.Supp. 658, 666 (N.D. Miss.1984). Recently, in *Missouri v. Jenkins,* 488 U.S. ——, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989), the Supreme Court rejected an eleventh amendment challenge to an enhancement based on delay in payment. The Court stated:

> We agree, therefore, that an appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise—

is within the contemplation of the statute . . . An adjustment for delay in payment is, we hold, an appropriate factor in the determination of what constitutes a reasonable attorney's fee under § 1988.

*Jenkins,* 488 U.S. at ——, 109 S.Ct. at 2469, 105 L.Ed.2d at 240.

The Court finds that there has been a significant delay in payment as measured from the time a fee-paying client would have paid. The Court will accordingly base its fee calculation on current rates in order to compensate the Plaintiffs for delay, but the rates will be those associated with the experience levels possessed by the attorneys at the time the services were rendered, as opposed to current experience levels. *See Leroy,* 831 F.2d at 584–85.

■■■ 7. *Should the work of paralegals and law clerks be compensated separately, and if so, should they be billed at market rates or at cost to the attorneys?* In *Jenkins,* the Supreme Court noted that the proposition is self-evident that the "reasonable attorney's fee" provided for by statute should compensate the work of paralegals, as well as that of attorneys. Turning to the more difficult question of valuation of those services, the Court suggested that the answer was to be found by reference to the rates and practices prevailing in the relevant market. 488 U.S. at ——, 109 S.Ct. at 2470, 105 L.Ed.2d at 242. In explaining the effect of separately stating paralegal and law clerk hours on the hourly rate charged by attorneys the Court stated:

> Thus, if the prevailing practice in a given community were to bill paralegal time separately at market rates, fees awarded the attorney at market rates for attorney time would not be fully compensatory if the court refused to compensate hours billed by paralegals or did so only at "cost." Similarly, the fee awarded would be too high if the court accepted separate billing for paralegal hours in a market where that was not the custom.

*Id.*

The "relevant legal community" for purposes of this analysis is the judicial district

in which the litigation occurred, rather than the attorney's primary location of practice. *Jordan v. Allain*, 619 F.Supp. 98, 112–13 (N.D.Miss.1985). This case has been tried in the Southern District of Mississippi, Jackson Division. The Court finds that it is the generally prevailing practice in the Jackson Division to bill separately at market rates for the work of paralegals and law clerks. The parties agree that $35.00 is the proper hourly rate for such work. *See generally Beamon v. City of Ridgeland*, 666 F.Supp. 937 (S.D.Miss.1987); *Kirksey v. Danks*, 608 F.Supp. 1448, 1459 (S.D.Miss.1985) (paralegal fees awarded on hourly market rate).

On the other hand, purely clerical or secretarial tasks, by whomever performed, are overhead and customarily included in the attorney's hourly fee, which is calculated to cover those items together with a profit margin. Attorney McDuff claims that while he was a professor at Ole Miss during part of the relevant time period, he incurred out-of-pocket expenses for secretarial services, research assistants, etc. This fact does not transform his expenses of this nature from overhead into separately billable time. The Court holds that these items are adequately reflected in the lodestar.

■ 8. *Are the Plaintiffs entitled to an enhancement of the lodestar?* The Plaintiffs claim that they are entitled to a 100% enhancement for contingency; that is, they claim that because there was a distinct possibility that they could have lost the case and thus received no fee at all, the fee they did receive should be enhanced to reflect that risk of nonpayment. The propriety of contingency enhancements under section 1988 is governed by the decision of the Supreme Court in *Pennsylvania v. Delaware Valley Citizens' Council*, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987). In a plurality opinion, four justices expressed disapproval of contingency enhancements generally, but noted that were the Court to allow them, it should limit them to the "exceptional cases" in which "there [is] evidence in the record, and the trial court ... so find[s], that without risk-

enhancement plaintiff would have faced substantial difficulties in finding counsel in the local or other relevant market." *Id.* at 729–31, 107 S.Ct. at 3088–89.

In a separately concurring opinion, Justice O'Connor found that while the facts of *Delaware Valley* did not justify a contingency enhancement in that case, "Congress did not intend to foreclose consideration of contingency in setting a reasonable fee under fee-shifting provisions such as ... 42 U.S.C. § 1988." *Id.* at 731, 107 S.Ct. at 3089 (O'Connor, J., concurring in part and concurring in the judgment). In Justice O'Connor's view, courts should enhance a lodestar for contingency only if the applicant could establish that (1) "without an adjustment for risk the prevailing party would have faced substantial difficulties in finding [competent] counsel in the local or other relevant market," and (2) the market rate of "compensation for ... contingent fee cases *as a class*" was different from cases in which payment was certain, win or lose. *Id.* at 731–34, 107 S.Ct. at 3089–91.

Since Justice O'Connor concurred on the narrowest grounds, and since her position is the only one to which a majority of the Court, and perhaps even the whole Court, could subscribe, every circuit that has considered contingency enhancements since *Delaware Valley* has accepted her opinion as authoritative. *Islamic Center of Mississippi v. Starkville, Mississippi*, 876 F.2d 465, 470–71 (5th Cir.1989) citing, *inter alia, Mckenzie v. Kennickell*, 875 F.2d 330 (D.C. Cir.1989); *Leroy v. City of Houston*, 831 F.2d at 583–84; *Fadhl v. City and County of San Francisco*, 859 F.2d 649, 651 n. 1 (9th Cir.1988); *Wells v. Bowen*, 855 F.2d 37, 44–45 (2d Cir.1988); *Spell v. McDaniel*, 852 F.2d 762, 765–66 (4th Cir.1988); *Weisberg v. U.S. Dep't. of Justice*, 848 F.2d 1265, 1272 (D.C.Cir.1988); *Student Public Int. Res. Group v. A.T. & T. Bell Lab.*, 842 F.2d 1436, 1451–52 (3d Cir.1988); *Jenkins v. Missouri*, 838 F.2d 260, 267–68 (8th Cir. 1988), *aff'd,* — U.S. ——, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989); *Thompson v. Kennickell*, 836 F.2d 616, 621 (D.C.Cir. 1988); *Friends of the Earth v. Eastman Kodak Co.*, 834 F.2d 295, 298 (2d Cir.1987).

In the case *sub judice* the Plaintiffs have submitted several affidavits to the Court to establish, as required by *Delaware Valley*, that the Plaintiff class would have faced substantial difficulty retaining competent counsel in the legal market if counsel were not provided a contingency enhancement, and that contingency cases are usually compensated differently from non-contingency cases.

One particular circumstance of this case that compels the Court to grant a contingency enhancement is that the case involved *judicial* elections in Mississippi. Whether the case was won or lost, the attorneys for the Plaintiffs encountered a significant risk of alienating state court judges to the detriment of their law practices in Mississippi. The Court therefore finds, on the basis of the Plaintiffs' affidavits and the aforestated proposition, that without a risk enhancement plaintiffs would have faced substantial difficulties in finding counsel in the local or other relevant market. Accordingly, the Court will enhance the lodestar for risk or contingency by the factor of 25%.

■■■ 9. *Is travel time to be compensated at the full hourly market rate?* This Court held in *Kirksey v. Danks*, 608 F.Supp. 1448, 1456 (S.D.Miss.1985) that pure travel time should be compensated at 50%. The Court declines to alter that rule. Mr. McDuff claims, however, that he did work while travelling by plane. While such time is not "pure" travel time, the Court notes that one simply cannot be 100% efficient while travelling by common carrier or otherwise. Therefore, the Court will compensate for what the Court will term "productive" travel time at 75% of the hourly market rate.

■■■ 10. *Are the Plaintiffs entitled to their fees incurred in litigating the fee question?* The prevailing party analysis is independently applied to the litigation over the prevailing party's fee application for purposes of determining whether time expended in litigating the fee request is compensable under section 1988. *See Institutionalized Juveniles v. Secretary of Pub. Welfare*, 758 F.2d 897, 924 (3d Cir.

1985). In *Muscare v. Quinn*, 680 F.2d 42, 44 (7th Cir.1982), the Court held that where a Plaintiff who has established his entitlement to a section 1988 fee award and has obtained an award of some fees, he has achieved success on the merits of his fee request and therefore is eligible for section 1988 fees for his efforts. The prevailing party on the fee application is entitled to fee compensation for all time reasonably expended in preparing, litigating, and successfully appealing or defending on appeal the fee request. *Cruz v. Hauck*, 762 F.2d 1230, 1233–35 (5th Cir.1985). The Court finds that the Plaintiffs are the prevailing party with regard to the fee issue.

In assessing the reasonableness of the fee requested for litigating the fee question, this Court is mindful of the admonition of the Supreme Court that a "request for attorney's fees should not result in a second major litigation." *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941. As the Court has stated earlier, and as is demonstrated by the length of this opinion, both sides of this dispute have over-litigated the fee request of this matter and have indeed turned it into a second major litigation.

Plaintiffs have submitted a claim for over $40,000.00 for litigating their fee and expenses claim. This amount is unreasonable. As experienced civil rights attorneys, the Plaintiffs' attorneys should have reasonably been able to present to the Court an adequate itemization of their fees and expenses for $5,000.00 or less. However, the Defendants raised many unnecessary arguments and otherwise vigorously challenged the fee and expense submissions of the plaintiffs, causing the Plaintiffs to incur more costs to support their position. Accordingly, the court will double the otherwise reasonable amount and award the Plaintiffs $10,000.00 for their efforts to collect their fees and expenses from the State of Mississippi.

■■ 11. *Who is liable for payment of the fees?* The state defendants in these consolidated actions were sued in their official capacities. Therefore, the Court directs that the award of fees and expenses be paid by the State of Mississippi. *See*

*Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978); *Connor v. Winter,* 519 F.Supp. 1337 (S.D.Miss.1981).

## THE FEE CALCULATION

Having dealt with the legal issues raised by the parties, the Court will now set forth the number of hours and the reasonable rates to be charged in calculating the lodestar amount.

1. REASONABLE HOURS TIMES REASONABLE RATES. The attorneys for the Plaintiffs seek compensation for the following hours at the rates indicated.

| Attorneys | Hours | Rate | Lodestar |
|---|---|---|---|
| Carroll Rhodes | 1719.50 | $150 | $257,925.00 |
| Robert McDuff | 1077.20 | $145 | $156,194.00 |
| Sam Issacharoff | 730.30 | $135 | $ 98,590.50 |
| Ellis Turnage | 574.75 | $110 | $ 63,222.50 |
| Pam Karlan | 84.90 | $110 | $ 9,339.00 |
| Patricia Hanrahan | 78.90 | $100 | $ 7,890.00 |
| Brenda Wright | 38.70 | $100 | $ 3,870.00 |
| Total | | | $597,031.00 |

The Plaintiffs also seek a 100% contingency enhancement, plus expenses of $119,728.18, plus fees for law students and paralegals of $7,507.50, for a total of $1,321,297.68.

In examining the above hours for reasonableness, the Court noted many entries which lacked the explanatory detail necessary for the Court to test the reasonableness of the billing judgment of the attorney. Items such as "phone call to Rhodes," or "conference with Turnage," or "prepared for case," of which the record is replete, do not state the subject matter of the activity and do not give the Court a basis upon which to test the reasonableness of the claimed hours.

In the case of Carroll Rhodes, approximately eleven hours were deducted for this reason. Approximately 200 hours were deducted from McDuff's time, 32 hours from Turnage's time and two hours from Karlan's time. Attorney Issacharoff's records were so vague that rather than eliminate every entry that lacked any explanatory

4. The following are hours incurred lawyers that should have been delegated to a paralegal and will be compensated at the paralegal rate of $35/hour:

detail, was administrative, or was otherwise noncompensable, and thus reduce his hours to practically nil, the Court applied an across-the-board reduction of his hours (excluding travel) of 50%. The same is true for Patricia Hanrahan. All of Brenda Wright's work was on the fee petition, for which the Court has awarded separately. Accordingly, her hours were deleted entirely.

Additionally, approximately twenty-two hours were deducted for work of a secretarial or clerical nature, such as typing, making travel arrangements, or recording time or filling out expense vouchers. In accordance with the holding of the Court, *supra,* approximately thirty hours spent in pursuit of preclearance activities were deleted from the time of the attorneys other than those whose hours were reduced across the board. Rates were reduced for work that more properly should have been delegated to a paralegal or otherwise should command a lesser rate because of the non-legal nature of the work.[4] Attached as Exhibit "A" to this opinion is a copy of the itemization of hours submitted by the attorneys, with the comments of the Court beside each item. Exhibit "B" is a key to the symbols used to designate the Court's comments.

Apart from the foregoing, the Court is satisfied that, considering the complexity, novelty and difficulty of the questions raised in this suit, the skill, experience and reputation of the attorneys and the excellent results obtained, the hours expended by the attorneys were reasonable and should be included in the lodestar calculation. However, whenever seven attorneys work on one case, some duplication of services is inevitable. The lodestar figure will be adjusted by a factor of 5% in a downward direction to account for this phenomenon.

With regard to reasonable hourly rates, the Court finds that the rates prevailing in

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| Carroll Rhodes | 9.75 | $35.00 | $341.25 |
| Robert McDuff | 0.50 | $35.00 | $ 17.50 |
| | | | $358.75 |

the situs of the litigation, Jackson, Mississippi, are the rates to be applied, and that current rates should be used to account for delay in recovery, but should be applied on the basis of the amount of experience and expertise the attorneys had at the time their services were rendered.

The Plaintiffs' lead attorney, Carroll Rhodes, was admitted to practice in 1978. Since that time, he has been involved in litigation in all of the Courts of Mississippi, the Fifth Circuit Court of Appeals and the United States Supreme Court. He has been involved in complex civil rights litigation, including Voting Rights Act cases, throughout his years of practice. Rhodes had six years of experience at the time this suit was filed, and has eleven years of experience today. Rhodes has asked for compensation at the rate of $150.00 per hour. The Court has awarded fees in numerous complex civil cases of this nature. The Court regularly sees claims in complex non-civil rights cases in the range of $80.00 to $90.00 from attorneys with more years of experience than Rhodes had at the time his services were rendered. The Court is aware of no attorney in this market receiving $150.00 per hour. Accordingly, the Court has awarded the currently prevailing rate in this district for the amount of experience Rhodes had at the time that his services were rendered. Furthermore, the rate awarded is in line .with precedent. *See, e.g., Beamon v. City of Ridgeland,* 666 F.Supp. 937, 944 (S.D.Miss.1987), *Catchings v. City of Crystal Springs,* 626 F.Supp. 987 (S.D.Miss.1986); *Hinson v. Amite County Democratic Executive Committee,* Civil Action Number J83–0684(B) (S.D.Miss. June 19, 1985); *Jordan v. Allain,* 619 F.Supp. 98, 113 (N.D.Miss. 1985); *Kirksey v. Danks,* 608 F.Supp. 1448 (S.D.Miss.1985).

The other attorneys have less experience than Rhodes. In their claim for fees, the Plaintiffs' attorneys have arranged themselves in descending order of total hours worked and rate requested. The Court agrees that the ranking is appropriate for the attorneys involved. Accordingly, the

Court has reduced the claimed rates for the other attorneys in proportion to the reduction of Rhodes's rate.

After an exhaustive, item-by-item review of the time records of the seven attorneys seeking compensation and reduction of the hours submitted by the attorneys for which compensation has been sought as described above, the Court has concluded that the reasonable hours expended by the Plaintiffs' attorneys on the substantive portions of the litigation and the appropriate rate of compensation for each attorney can be broken down as follows:

| Attorneys | Hours [5] | Rate | Lodestar |
|---|---|---|---|
| Carroll Rhodes | 1302.00 | $105.00 | $136,710.00 |
| Robert McDuff | 727.20 | $100.00 | $ 72,720.00 |
| Sam Issacharoff | 314.92 | $ 95.00 | $ 29,917.40 |
| Ellis Turnage | 392.45 | $ 75.00 | $ 29,433.75 |
| Pam Karlan | 65.90 | $ 75.00 | $ 4,942.50 |
| Patricia Hanrahan | 39.45 | $ 75.00 | $ 2,958.75 |
| Brenda Wright | 0.00 | $ 75.00 | $ 0.00 |
| Total | | | $276,682.40 |

The reasonable amount of attorney travel time is as follows:

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| Carroll Rhodes | 250.00 | $52.50 | $13,125.00 |
| Robert McDuff | 112.00 | $50.00 | $ 5,600.00 |
| Robert McDuff * | 14.00 | $75.00 | $ 1,050.00 |
| Sam Issacharoff | 92.20 | $47.50 | $ 4,379.50 |
| Sam Issacharoff * | 4.00 | $71.00 | $ 284.00 |
| Ellis Turnage | 129.50 | $40.00 | $ 5,180.00 |
| Pamela Karlan | 15.50 | $40.00 | $ 620.00 |
| Total | | | $30,238.50 |

* productive travel time

Attorneys McDuff and Issacharoff claim many more hours of "productive travel time." However, in many of their time entries they simply noted, "worked on plane." Without specification of the subject matter of their work, the hourly rate for travel time for those hours cannot be enhanced.

By adding the totals of the above computations, plus the "paralegal time," the Court arrives at a lodestar figure of $307,-279.65. Reducing 5% for duplication yields $291,915.67. Enhancing this figure 25% for risk produces a figure of $364,894.59. Adding $10,000.00 for time spent by all Plaintiffs' attorneys and support staff on

---

**5.** These figures do not include travel time or time spent on the fee application.

the fee litigation, the Court arrives at an interim total of $374,894.59.[6]

The following is a schedule of compensation for the hours of paralegals and student law clerks or interns spent on the liability and remedy portions of the case. The Court finds that their services are relatively comparable in value, and the parties have agreed that $35.00/hour is a reasonable rate of compensation for these services.

| Paralegal/Law Clerk | Hours | Rate | Total |
|---|---|---|---|
| Marvin Krislov | 8.10 | $35.00 | $ 283.50 |
| Kristen F. Bauer | 46.20 | $35.00 | $1,617.00 |
| Blair Bernholz | 41.30 | $35.00 | $1,445.50 |
| Barry J. Fisher | 55.60 | $35.00 | $1,946.00 |
| Emily Epstein | 14.50 | $35.00 | $ 507.50 |
| | | | $5,799.50 |

Consistent with the limits of 28 U.S.C. §§ 1821 and 1929, as interpreted and applied in *Crawford Fitting* and *Leroy*, the Court finds the following to be the compensable expenses incurred in connection with the retention of expert witnesses:

| Expert | Attendance Fee + ($30/day) | Other § 1821 Expenses | = Total |
|---|---|---|---|
| Chandler Davidson | $180.00 | $ 637.68 | $ 817.68 |
| Allan Lichtman | $360.00 | $2,558.00 | $2,918.00 |
| Richard Engstrom | $ 60.00 | $ 242.59 | $ 302.59 |
| Neil McMillan | $ 60.00 | $ 0.00 | $ 60.00 |
| William O'Hare | $ 90.00 | $ 591.00 | $ 681.00 |
| Total | | | $4,779.27 |

---

6. In adopting the lodestar adjustment approach to the determination of a reasonable fee, the Supreme Court implicitly replaced the method of more or less unquantifiably considering the 12 factors listed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). These factors are:

1. Time and labor required
2. The novelty and difficulty of the questions
3. The skill requisite to perform the legal service properly
4. The preclusion of employment by the attorney due to acceptance of the case
5. The customary fee
6. Whether the fee is fixed or contingent
7. Time limitations imposed by the client or the circumstances
8. The amount involved and the results obtained
9. The experience, reputation, and ability of the attorneys
10. The "undesirability" of the case
11. The nature and length of the professional relationship with the client
12. Awards in similar cases.

In fact, most of the *Johnson* factors have been identified as absorbed into the lodestar adjustment methodology, as adopted by the Supreme Court in *Hensley* and *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). For example, numbers 1, 2, 4, and 7 have been subsumed in the "reasonable hours expended." The "reasonable hourly rates" rubric encompasses items 3, 5, 9, and 12. A downward adjustment for partial success accounts for item 8, and an upward adjustment for risk or contingency accounts for items 6, and 10.

However, and perhaps needlessly, the Court has given consideration to each of the *Johnson* factors. 1. The Court has considered the time and labor required in calculating the lodestar amount. 2. As the Court has noted *supra*, this case involved novel questions of law. The Plaintiffs accordingly worked more hours, which hours the Court has included in the lodestar, unless they were deleted for some other reason, such as lack of explanatory detail in the time records. 3. The Court has found that the lawyers for the Plaintiffs were possessed of the necessary skill to successfully and efficiently represent the interests of their clients. 4. The attorneys spent a great deal of time on this case over five years. The record does not, however, contain specific references to employment that was foregone because of acceptance of this case. 5. The court has considered the customary fee for this type of work in setting the hourly rates. 6. The Court has enhanced the lodestar for contingency. 7. While there is no specific evidence of special time restraints, the Court notes that judicial elections were postponed because of this lawsuit. Therefore, it is reasonable to assume that there were some time restraints, which the Court has considered in fixing the rates. 8. This was "high stakes" litigation, and as has been noted earlier, the Plaintiffs have been highly successful. No amount has been reduced for failure to prevail on any issue. 9. The Court has already noted the experience, reputation, and ability of the attorneys in fixing their hourly rates. 10. The Court has enhanced the lodestar for undesirability as well as risk. 11. The Court finds the eleventh factor not to militate in favor of either increasing or decreasing the rates or the lodestar. 12. The Court has reviewed and cited awards from similar cases in fixing the reasonable rates.

In view of *Hensley* and *Blum* this Court respectfully suggests to the Court of Appeals for the Fifth Circuit that addressing the *Johnson* factor should no longer be required.

Other compensable litigation expenses are broken down as follows:

| Service Provider | Expenses |
|---|---|
| Carroll Rhodes | $ 2,243.38 |
| Ellis Turnage | $ 2,511.00 |
| Lawyers' Committee | $32,793.27 |
| Legal Defense Fund | $ 2,092.00* |
| Total | $39,639.65 |

\* reduced for items in the nature of overhead, such as typing.

The grand total of reasonable litigation expenses is $50,218.42.[7]

Accordingly, the grand total of fees and expenses owed by the State of Mississippi to the Plaintiffs is $425,113.00.

IT IS THEREFORE ORDERED that the State of Mississippi pay unto the Plaintiffs in this cause, a sum in the amount of $180,577.68 as attorney's fees and expenses for Carroll Rhodes, in the amount of $94,272.65 as attorney's fees for Robert McDuff, in the amount of $41,064.81 as attorney's fees for Samuel Issacharoff, in the amount of $43,614.83 as attorney's fees and expenses for Ellis Turnage, in the amount of $6,605.46 as attorney's fees for Pamela Karlan, and in the amount of $3,513.51 as attorney's fees for Patricia Hanrahan, plus the sum of $43,372.04 as reasonable litigation expenses incurred by the Lawyers' Committee for Civil Rights Under Law, and $2,092.00 as reasonable litigation expenses incurred by the NAACP Legal Defense and Educational Fund, Inc., plus $10,000.00 to be allocated by the Plaintiffs' attorneys among themselves as they deem meet and proper for their work on the fee petition, plus interest to accrue from and after this date at the applicable federal rate of 7.97%, plus costs, all to be paid in accordance with the separate judgment issued herewith pursuant to Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED.

---

7. The Plaintiffs failed to include contemporaneous records of expense items such as plane tickets, photocopying receipts, taxi receipts, or credit card slips. However, the expenses were itemized, and the Court was able to test their reasonableness. The Defendants did not object to the lack of receipts, and the Court finds the total amount for expenses not unreasonable for this litigation which lasted over five years.